United States District Court

for the

District of Wyoming

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2023 JAN -6  AM 11: 03
MARGARET BOTKINS, CLERK
CASPER

| | |
|---|---|
| Jake Stanley DeWilde, Individually and as Trustee of the DEWILDE ARMS TRUST, <br><br> Plaintiff, <br><br> v. <br><br> Attorney General Of the United States; Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, <br><br> Defendants. | Case No. 23 CV 03-S |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

NOW COMES Plaintiff Jake Stanley DeWilde, Individually and as Trustee of the DeWilde Arms Trust, and for his Complaint for Declaratory and Injunctive Relief states as follows:

**INTRODUCTION**

1.      This is an action seeking declaratory and injunctive relief from 18 U.S.C. § 922(o) and the implementing regulation 27 C.F.R. § 479.105(a). These statutory and regulatory provisions generally act as an unlawful *de facto* ban on the transfer or possession of a machinegun manufactured after May 19, 1986. By imposing such a ban on an entire class of weapons, the statutes and regulations exceed the power of the United States under Article I of the United States Constitution; and violate the Second Amendment rights of the Plaintiff.

2.      Plaintiff seeks declaratory and injunctive relief against the unconstitutional provisions contained in 18 U.S.C. § 922(o) and 27 C.F.R. § 479.105(a); declaring the ban on machineguns unconstitutional under the Second Amendment and in violation of Article I of the United States Constitution.

## PARTIES

3.      Plaintiff Jake Stanley DeWilde is an adult male citizen of the State of Wyoming and is the Trustee of the DeWilde Arms Trust.

4.      Defendant Merrick Garland is sued in his official capacity as the Attorney General of the United States of America. As Attorney General, Defendant Garland is responsible for administering and executing the laws of the United States, and is currently enforcing the laws complained of in this action.

5.      Defendant Steven Dettelbach is sued in his official capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE"). As Director of BATFE, Defendant Dettelbach is responsible for administering and executing the laws of the United States, and is currently enforcing the laws complained of in this action.

## BASIS FOR JURISDICTION

6. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1346, because this action arises under the Constitution and laws of the United States, and has jurisdiction to render declaratory relief under 28 U.S.C §§ 2201, 2202.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391, 1402, because the Plaintiff resides in Wyoming, and the Defendants are agencies of the United States or officers thereof acting in their official capacity.

### FACTUAL ALLEGATIONS

8. The Second Amendment states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

9. The Second Amendment confers "an individual right to keep and bear arms" *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008), and it "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.*, at 595.

10. In *U.S. v. Miller*, 307 U.S. 174 (1939), Jack Miller was charged with violating the National Firearms Act by transporting in interstate commerce a shotgun having a barrel less than 18 inches in length that was not registered and that they did not possess a stamp-affixed written order for. The *Miller* opinion "assumes from the prologue that the Amendment was designed to preserve the militia, 307 U. S., at 178" *District of Columbia v. Heller*, 554 U.S. 570, 624 (2008).

11. In *Heller*, the court analyzed the *Miller* opinion, and determined that it was not a comprehensive analysis of the full scope of the Second Amendment. "The defendants made no appearance in the case, neither filing a brief nor appearing at oral argument; the Court heard

from no one but the Government (reason enough, one would think, not to make that case the beginning and the end of this Court's consideration of the Second Amendment)." *Id.*, at 673. *Heller* emphasized the limited extent of analysis of the Second Amendment conducted in *Miller*, acknowledging that there was a lack of evidence to determine whether or not the weapon in question was "any part of the ordinary military equipment or that its use could contribute to the common defense." *Id.*, at 622, and continued that "Beyond that, the opinion provided no explanation of the content of the right." *Id.*

12. In *Heller*, the court directed that *Miller*'s phrase "ordinary military equipment" be read "in tandem with what comes after: "[O]rdinarily when called for [militia] service [able-bodied] men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." 307 U. S., at 179." *Id.*, at 624. ""In the colonial and revolutionary war era, [small-arms] weapons used by militiamen and weapons used in defense of person and home were one and the same." *State v. Kessler*, 289 Ore. 359, 368, 614 P. 2d 94, 98 (1980) (citing G. Neumann, Swords and Blades of the American Revolution 6–15, 252–254 (1973))." *Id.*, at 624, 625.

13. The M16 rifle, and its variants, are the standard small-arms weapons in common use by the United States military[1]. The M16 is the quintessential rifle for use in the modern militia, just as the musket was the quintessential rifle for use in the militia of the colonial and revolutionary war era.

---

[1] *M16 Rifle*, Defense Advanced Research Projects Agency (n.d.) https://www.darpa.mil/about-us/timeline/agile-and-m16 (last accessed January 4, 2023).

14. 18 U.S.C. § 922(o) generally bans the possession or transfer of machineguns manufactured after May 19, 1986. The statute provides:

> (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
>
> (2) This subsection does not apply with respect to—
>
>> (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
>>
>> (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

15. In *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. ___ (2022), the court reaffirmed the standard established in *Heller* for Second Amendment challenges while rejecting the two-part framework that had been developed by Courts of Appeals:

> "Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.,* at 10.

16. "The test that the Court set forth in Heller and applies today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.,* at 17.

17. *Bruen* additionally clarified that a class of arms categorized as "dangerous and unusual" cannot be banned if they are in "common use":

> "Whatever the likelihood that handguns were considered "dangerous and unusual" during the colonial period, they are indisputably in "common use" for self-defense today. They are, in fact, "the quintessential self-defense weapon." *Id.,* at 629. Thus, even if these colonial laws prohibited the carrying of handguns because they were considered "dangerous and unusual weapons" in the 1690s, they provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today." *Id.,* at 39.

18. With the clarification of *Bruen,* the M16 rifle, being in common use today as the standard small-arms weapon used by the United States military, as well as it and hundreds of thousands of machineguns being lawfully registered and not in the possession or under control of the U.S. Government[2], cannot be banned on the basis of being "dangerous and unusual".

---

[2] *Firearms Commerce in the United States - Annual Statistical Update 2021*, Bureau of Alcohol, Tobacco, Firearms, and Explosives (2021) https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download (last accessed January 4, 2023).

19. On December 8, 2022, Plaintiff submitted an ATF Form 5320.1, Application to Make and Register a firearm, to the BATFE, requesting permission to make an M16 machinegun.

20. On December 20, 2022, the BATFE disapproved Plaintiff's application, citing 18 U.S.C. § 922(o) (see Appendix A).

## COUNT I

## VIOLATION OF THE SECOND AMENDMENT RIGHT

## TO KEEP AND BEAR ARMS

21. Plaintiff incorporates each and every paragraph as if copied in full hereafter.

22. The machinegun ban in 18 U.S.C. § 922(o) and the associated regulations violate Plaintiff's Second Amendment rights.

23. Plaintiff desires to own an M16 machinegun for all lawful purposes, including defense of hearth and home and militia functions.

24. Plaintiff is entitled to declaratory and injunctive relief that 18 U.S.C. § 922(o) is unconstitutional.

## PRAYER FOR RELIEF

25. Plaintiff respectfully asks this Court to:

   A. Issue a judgment declaring that 18 U.S.C. § 922(o) is unconstitutional.

   B. Issue an order requiring the Defendants to approve Plaintiff's Form 1 application.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 1/4/2023

Signature of Plaintiff

Printed Name of Plaintiff   JAKE S. DeWILDE

DATED this January 4, 2023.

                                        Respectfully Submitted,

                                        _____

                                        Jake S. DeWilde

                                        PO Box 267

                                        Wapiti, WY 82450

                                        (307) 587-4524