NICHOLAS VASSALLO
United States Attorney
JEREMY A. GROSS (WY Bar #7-5110)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY  82003-0668
Telephone: 307-772-2124
jeremy.gross@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

JEREMY S.B. NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L St. NW
Washington, DC 20005
Phone: (202) 532-3114
jeremy.s.newman@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| Jake Stanley De Wilde, Individually and as Trustee of the DEWILDE ARMS TRUST, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 1:23-cv-00003-SWS |
| Attorney General of the United States; Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 1

    I.    Statutory and Regulatory Background .............................................. 1

    II.   Plaintiff's Complaint ....................................................................... 4

LEGAL STANDARD ............................................................................................ 6

ARGUMENT .......................................................................................................... 6

    I.    Under Supreme Court Precedent, Machineguns Are Not Protected by the Second Amendment ......................................................... 6

    II.   Courts Have Uniformly Upheld 18 U.S.C. § 922(o) ......................... 10

        A.   Six Courts of Appeals Have Upheld § 922(o) Since *Heller* ................... 10

        B.   Multiple District Courts Have Upheld § 922(o) Since *Bruen* ................ 13

    III.  Section 922(o) Comports with the Second Amendment Under *Bruen*'s Standard 14

        A.   The Second Amendment's Plain Text Does Not Cover Possession of a Machinegun ........................................................... 15

        B.   Section 922(o) Is Consistent with Historical Tradition ........................... 20

    IV.  The Complaint Does Not State an Article I Claim ............................. 22

    V.   DeWilde Lacks Authority to Represent the Trust *Pro Se* ................... 22

CONCLUSION ...................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................6

*Bonidy v. U.S. Postal Serv.*,
790 F.3d 1121 (10th Cir. 2015).......................................................................10

*District of Columbia v. Heller*,
554 U.S. 570 (2008)...................................................................................*passim*

*English v. State*,
35 Tex. 473 (1871)...........................................................................................21

*Farmer v. Higgins*,
907 F.2d 1041 (11th Cir. 1990).........................................................................4

*Hamblen v. United States*,
591 F.3d 471 (6th Cir. 2009)...........................................................................11

*Hollis v. Lynch*,
827 F.3d 436 (5th Cir. 2016)....................................................................*passim*

*McDonald v. City of Chicago*,
561 U.S. 742 (2010)...........................................................................................8

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
142 S. Ct. 2111 (2022)...............................................................................*passim*

*O'Neill v. State*,
16 Ala. 65 (1849).............................................................................................21

*Sherman v. Trinity Teen Sols., Inc.*,
No. 20-cv-215-SWS, 2021 WL 7286422 (D. Wyo. Nov. 30, 2021)........................6

*State v. Langford*,
10 N.C. 381 (1824).........................................................................................21

*State v. Lanier*,
71 N.C. 288 (1874).........................................................................................21

*United States v. Carrero*,
    No. 2:22-cr-00030, 2022 WL 9348792 (D. Utah Oct. 14, 2022)............................ 13

*United States v. Fincher*,
    538 F.3d 868 (8th Cir. 2008) ........................................................... 11, 12

*United States v. Haney*,
    264 F.3d 1161 (10th Cir. 2001)............................................................. 22

*United States v. Henry*,
    688 F.3d 637 (9th Cir. 2012) ...................................................... *passim*

*United States v. Hoover*,
    --- F. Supp. 3d ---, 2022 WL 10524008 (M.D. Fla. Oct. 18, 2022)...................... 13

*United States v. Jennings*,
    195 F.3d 795 (5th Cir. 1999) .......................................................... 12, 17

*United States v. Lain*,
    773 F. App'x 476 (10th Cir. 2019)......................................................... 23

*United States v. Lain*,
    No. 17-cv-113-J, 2018 WL 8244912 (D. Wyo. Dec. 28, 2018)........................... 23

*United States v. Miller*,
    307 U.S. 174 (1939)................................................................6, 7, 15, 16

*United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown
    Caliber Serial No. LW001804,*
    822 F.3d 136 (3d Cir. 2016) ........................................................... 10, 11

*United States v. Rozier*,
    598 F.3d 768 (11th Cir. 2010) .............................................................. 10

*United States v. Serawop*,
    505 F.3d 1112 (10th Cir. 2007).............................................................. 10

*United States v. Simien*,
    2023 WL 1980487 (W.D. Tex. Feb. 10, 2023) ........................... 13, 14, 16, 18, 20

*United States v. Teerlink*,
    2022 WL 17093425 (D. Utah Nov. 21, 2022)................................................ 13

*United States v. Thompson/Ctr. Arms Co.*,
    504 U.S. 505 (1992)....................................................................... 3

*United States v. Wilks*,
  58 F.3d 1518 (10th Cir. 1995)..................................................................17

*United States v. Zaleski*,
  489 F. App'x 474 (2d Cir. 2012)......................................................... 10, 11

**<u>Constitutional Provisions</u>**

U.S. Const. amend. II...............................................................................15

U.S. Const. art. I, § 8, cl. 3.......................................................................22

**<u>Statutes</u>**

18 U.S.C. § 921.......................................................................................2

18 U.S.C. § 922........................................................................... *passim*

26 U.S.C. § 5811.....................................................................................4

26 U.S.C. § 5812.....................................................................................4

26 U.S.C. § 5822.....................................................................................4

26 U.S.C. § 5841.....................................................................................4

26 U.S.C. § 5845.....................................................................................2

720 Ill. Comp. Stat. 5/24-1....................................................................18

Alaska Stat. § 11.61.200.........................................................................18

Ariz. Rev. Stat. § 13-3101.......................................................................18

Ariz. Rev. Stat. § 13-3102.......................................................................18

Cal. Penal Code § 32625.........................................................................18

Colo. Rev. Stat. § 18-12-102...................................................................18

D.C. Code § 22-4514...............................................................................18

Del. Code tit. 11, § 1444.........................................................................18

Fla. Stat. § 790.221.................................................................................18

Ga. Code Ann. § 16-11-122.....................................................................18

Haw. Rev. Stat. § 134-8 ................................................................................... 18

Ind. Code § 35-47-5-8 ..................................................................................... 18

Iowa Code § 724.1 ........................................................................................... 18

Iowa Code § 724.3 ........................................................................................... 18

Kan. Stat. § 21-6301 ........................................................................................ 18

La. Stat. § 40:1752 ........................................................................................... 18

Mass. Gen. Laws ch. 140 ................................................................................. 18

Me. Rev. Stat. Ann. tit. 17-A ........................................................................... 18

Mich. Comp. Laws § 750.224 .......................................................................... 18

Minn. Stat. § 609.67 ......................................................................................... 18

Mo. Ann. Stat. § 571.020 ................................................................................. 18

N.C. Gen. Stat. § 14-409 .................................................................................. 18

N.D. Cent. Code § 62.1-05-01 ......................................................................... 18

N.J. Stat. § 2C:39-5 .......................................................................................... 18

N.Y. Penal Law § 265.02 ................................................................................. 18

Neb. Rev. Stat. § 28-1203 ................................................................................ 18

Nev. Rev. Stat. § 202.350 ................................................................................ 18

Ohio Rev. Code Ann. § 2923.11 ...................................................................... 18

Ohio Rev. Code Ann. § 2923.17 ...................................................................... 18

Or. Rev. Stat. § 166.272 ................................................................................... 18

Pub. L. No. 73-474, 48 Stat. 1236 (June 26, 1934) ........................................... 2

Pub. L. No. 90-618, 82 Stat. 1213 (Oct. 22, 1968) ........................................... 3

Pub. L. No. 99-308, 100 Stat. 449 (May 19, 1986) ............................... 3, 4, 17

R.I. Gen. Laws § 11-47-8.........................................................................................18

S.C. Code Ann. § 16-23-230...................................................................................18

S.D. Codified Laws § 22-1-2....................................................................................18

S.D. Codified Laws § 22-14-6..................................................................................18

Tenn. Code Ann. § 39-17-1302................................................................................18

Tex. Penal Code Ann. § 46.05.................................................................................18

W. Va. Code § 61-7-9..............................................................................................18

Wash. Rev. Code § 9.41.190....................................................................................18

Wis. Stat. § 941.26..................................................................................................18

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................6

**Regulations**

27 C.F.R. § 479.105..............................................................................................4, 5

**Other Authorities**

1 W. Russell, A Treatise on Crimes and Indictable Misdemeanors (1831)...............21

3 B. Wilson, Works of the Honourable James Wilson (1804)....................................21

78 Cong. Rec. 11,400 (June 13, 1934)......................................................................3

ATF, *Firearms Commerce in the United States – Annual Statistical Update 2021* (2021),
    https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download..........20

C. Humphreys, A Compendium of the Common Law in Force in Kentucky (1822).................21

E. Lewis, An Abridgment of the Criminal Law of the United States (1847)............................21

F. Wharton, A Treatise on the Criminal Law of the United States (1852)................................21

H.R. Rep. No. 73-1780, at 1 (1934) ....................................................................3, 17

H.R. Rep. No. 99-495 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327.......................17

H. Stephen, Summary of the Criminal Law 48 (1840)............................................. 21

J. Dunlap, The New–York Justice 8 (1815).......................................................... 21

William Blackstone, 4 Commentaries on the Laws of England (1769)................8, 14, 15-16, 21

William Rosenau, *The Origins of the First Modern Weapon,* TECH. REV. (1987), (reviewing
   John Ellis, *The Social History of the Machine Gun* (1986))................................. 16

## INTRODUCTION

Plaintiff Jake Stanley DeWilde claims in this lawsuit that he — and, by extension, every law-abiding citizen — has a constitutional right to possess the same advanced weaponry that the United States military uses to equip armed forces on the battlefield, the M-16 machinegun. The Second Amendment does not countenance that result. The Supreme Court recognized in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and reaffirmed in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), that although the Second Amendment protects the rights of law-abiding citizens to possess arms that are in common use for lawful purposes such as self-defense, it does not guarantee a right to possess dangerous and unusual weapons. *See Heller*, 554 U.S. at 624, 627; *Bruen*, 142 S. Ct. at 2128. The Supreme Court has cited machineguns such as the M-16 rifle as a prime example of the type of dangerous and unusual weapon that "may be banned," dismissing as "startling" the notion that machineguns are protected by the Second Amendment. *Heller*, 554 U.S. at 624, 627. Since *Heller*, courts have uniformly upheld restrictions on machineguns, including a small but growing body of case law since *Bruen*. In prohibiting possession of machineguns with limited exceptions not applicable here, 18 U.S.C. § 922(o) does not transgress the Second Amendment. Machineguns are among the most dangerous firearms in existence, and they are not commonly used for lawful purposes such as self-defense. Machineguns are beyond the scope of the Second Amendment's text, and 18 U.S.C. § 922(o) is consistent with this nation's historical tradition of restricting dangerous and unusual weapons. The Court should dismiss Plaintiff's lawsuit for failure to state a claim.

## BACKGROUND

### I.    Statutory and Regulatory Background

Congress has defined machinegun to include an automatic weapon that can fire more than one shot with a single function of the trigger, the frame or receiver of such a weapon, and certain

parts that can be used to convert a weapon into a machinegun. *See* 26 U.S.C. § 5845(b); 18 U.S.C. § 921(a)(24).[1]   Federal regulation of machineguns evolved throughout the twentieth century, leading to the 1986 enactment of 18 U.S.C. § 922(o), which prohibits most possession of machineguns.

Congress first regulated machineguns with the passage of the National Firearms Act of 1934 ("NFA"), which was enacted not long after machineguns were "first widely used during World War I[.]" *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012).   The NFA regulated "firearms," a statutory term of art originally defined to include machineguns, short-barreled rifles, short-barreled shotguns, and silencers.   Pub. L. No. 73-474, 48 Stat. 1236, § 1(a) (June 26, 1934) (*codified as amended at* 26 U.S.C. § 5845(a)).   Among other things, the NFA imposed a transfer tax on NFA firearms such as machineguns, required registration of such firearms and completion of an application with the federal government to make and transfer such firearms, and criminalized possession or receipt of such firearms without compliance with the Act's requirements.   48 Stat. at 1237-38, §§ 3-6.

Legislative history shows that the NFA was intended to curb the spread of the type of weapons used by gangsters for criminal activity, with machineguns identified as the most

---

[1] Congress has refined the definition of machinegun over time and has variously used the spellings "machinegun" and "machine gun."   This memorandum uses "machinegun," the spelling currently used in federal firearms statutes, except when quoting a source that uses "machine gun."   Currently, federal law defines machinegun as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.   The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

dangerous weapons for gangsters.  The House Report for the NFA states: "The growing frequency of crimes of violence in which people are killed or injured by the use of dangerous weapons needs no comment.  The gangster as a law violator must be deprived of his most dangerous weapon, the machine gun."  *See* H.R. Rep. No. 73-1780, at 1 (May 28, 1934).  On the House floor, Rep. Doughton, the chairman of the committee that advanced the NFA, explained that "[f]or some time this country has been at the mercy of the gangsters, racketeers, and professional criminals," and "the primary purpose of the bill is to stop gangsters from getting hold of machine guns."  78 Cong. Rec. 11,400 (June 13, 1934).  "It is of course clear from the face of the Act that the NFA's object was to regulate certain weapons likely to be used for criminal purposes[.]"  *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (plurality opinion).

In 1968, Congress amended and updated various provisions of the NFA in the National Firearms Act Amendments of 1968, which was part of a legislative package that also included the Gun Control Act of 1968 ("GCA").  Pub. L. No. 90-618, 82 Stat. 1213 (Oct. 22, 1968).  Among other things, the GCA imposed recordkeeping and licensing requirements on manufacturers and dealers of firearms and prohibited certain categories of individuals (including felons, fugitives, and drug addicts) from receiving or shipping firearms.  *Id.* at 1216-21 (*codified as amended at* 18 U.S.C. § 922).

In 1986, Congress enacted § 922(o), which prohibits possession of most privately held machineguns, as part of the Firearms Owners Protection Act ("FOPA"), a broad set of reforms to the GCA.  Pub. L. No. 99-308, 100 Stat. 449 (May 19, 1986).  Section 922(o) makes it "unlawful for any person to transfer or possess a machinegun" except for transfers or possession of machineguns "under the authority of" a federal or state government agency, or "any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection

takes effect [May 19, 1986]."  18 U.S.C. § 922(o).  Through § 922(o), "Congress intended to prohibit the private possession of machine guns not lawfully possessed prior to May 19, 1986." *Farmer v. Higgins*, 907 F.2d 1041, 1044 (11th Cir. 1990).  When enacting FOPA, Congress found that the Act was necessary "to reaffirm the intent of the Congress" from the GCA not "to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes."  100 Stat. 449, § 1(b)(2).

The NFA's registration, taxation, and approval requirements for machineguns still apply to lawful machineguns that fit within one of the exceptions to § 922(o).  *See, e.g.*, 26 U.S.C. §§ 5811, 5812, 5822, 5841.  The NFA provides that an application to make or transfer a firearm "shall be denied" if the making, transfer, receipt or possession of such firearm would put the maker or transferee "in violation of law."  26 U.S.C. §§ 5812(a), 5822.  Similarly, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has enacted a regulation providing that "an application to make or transfer a firearm shall be denied if the making, transfer, receipt, or possession of the firearm would place the maker or transferee in violation of law," including 18 U.S.C. § 922(o). 27 C.F.R. § 479.105(a).  The regulation accordingly provides that "no application to make, transfer, or import a machine gun will be approved" unless the machinegun fits within one of the regulatory exceptions, which generally track the statutory exceptions in § 922(o) for machineguns lawfully possessed prior to May 19, 1986, or possessed or transferred under the authority of a government agency.  *See* 27 C.F.R. § 479.105.

## II.   Plaintiff's Complaint

Plaintiff Jake Stanley DeWilde ("Plaintiff" or "DeWilde") brings this lawsuit individually

and as trustee of the DeWilde Arms Trust (the "Trust").  Compl. for Declaratory and Inj. Relief ¶ 3, ECF No. 1 ("Compl.").  He sues Defendants Merrick Garland and Steven Dettelbach, in their official capacities as Attorney General and Director of ATF, respectively.  *Id.* ¶¶ 4-5.  The Trust submitted a form to the ATF, "requesting permission to make an M[-]16 machinegun."  *Id.* ¶ 19; Compl. App'x A, at 2, ECF No. 1-1.  Plaintiff alleges that the M-16 is "the standard small-arms weapon used by the United States military[.]"  Compl. ¶ 18; *see also Hollis v. Lynch*, 827 F.3d 436, 440 n.2 (5th Cir. 2016) ("The M-16 is a rifle in service with the United States military.  It is capable of automatic fire, that is to say, firing more than one round per trigger-action.").  Plaintiff alleges that he "desires to own an M[-]16 machinegun for all lawful purposes, including defense of hearth and home and militia functions."  Compl. ¶ 23.  The ATF denied Plaintiff's application, citing 18 U.S.C. § 922(o).  *See id.* ¶ 20; Compl. App'x A, at 9 ("Reasons For Disapproval: PROHIBITED FROM POSSESSION OF A FIREARM UNDER 18 U.S.C. 922(O).").  Plaintiff does not dispute that the M-16 rifle he wishes to make is a machinegun, or that 18 U.S.C. § 922(o), if constitutional, would prohibit his possession of such a weapon.  *See* Compl. ¶¶ 1, 14, 19-20.  Nor does he raise any objection to 27 C.F.R. § 479.105(a), other than that it implements 18 U.S.C. § 922(o), which he contends is unconstitutional.  Compl. ¶¶ 1, 22.

Plaintiff brings one claim, titled, "Violation of the Second Amendment Right to Keep and Bear Arms."  *Id.* at 7, Count I, Heading (capitalization and emphasis omitted).  Plaintiff claims that "[t]he machine gun ban in 18 U.S.C. § 922(o) and the associated regulations[2] violate Plaintiff's Second Amendment rights."  *Id.* ¶ 22.  Plaintiff seeks "declaratory and injunctive relief that 18 U.S.C. § 922(o) is unconstitutional."  *Id.* ¶ 24.  He asks the Court to "[i]ssue a judgment declaring

---

[2] This paragraph does not specify the associated regulations, but the Complaint elsewhere cites 27 C.F.R. § 479.105(a) as an implementing regulation of 18 U.S.C. § 922(o).  *See* Compl. ¶¶ 1-2.

that 18 U.S.C. § 922(o) is unconstitutional" and "[i]ssue an order requiring the Defendants to approve" Plaintiff's application to make a machinegun. *Id.* ¶¶ 25(A)-(B).[3]

## LEGAL STANDARD

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint's factual allegations, assumed to be true, must 'raise a right to relief above the speculative level' and must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Sherman v. Trinity Teen Sols., Inc.*, No. 20-cv-215-SWS, 2021 WL 7286422, at \*1 (D. Wyo. Nov. 30, 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard "requires the plaintiff to plead facts that allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The Court accepts the nonmoving party's well-pled factual allegations as true and construes them in the light most favorable to the nonmoving party, but it is not bound to accept an asserted legal conclusion as true." *Id.*

## ARGUMENT

I.    **Under Supreme Court Precedent, Machineguns Are Not Protected by the Second Amendment**

Under Supreme Court precedent, machineguns are in the category of weapons that can be restricted, or even banned, because they are dangerous and unusual weapons beyond the scope of the Second Amendment. In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court limited the types of weapons protected by the Second Amendment. *Miller* held that the NFA's registration requirements for short-barreled shotguns did not violate the Second Amendment,

---

[3] The Complaint's introductory paragraphs assert that § 922(o) "exceed[s] the power of the United States under Article I of the United States Constitution" and is "in violation of Article I of the United States Constitution," Compl. ¶¶ 1-2, but the Complaint contains no other allegations concerning any Article I claim.

reasoning: "In the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument." *Miller*, 307 U.S. at 178. The Court further explained that in the founding era, men engaged in militia service "were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." *Id.* at 179.

The Court next addressed the Second Amendment in detail in *District of Columbia v. Heller*, 554 U.S. 570 (2008), explaining that the Second Amendment protected the right to keep and bear weapons in common use, but not dangerous and unusual weapons. *Heller* held that "the Second Amendment conferred an individual right to keep and bear arms," but acknowledged that "the right was not unlimited[.]" *Heller*, 554 U.S. at 595. In articulating the limits of the Second Amendment right, the Court explained the significance of its holding in *Miller*. *Heller* rejected a reading of *Miller* that the Second Amendment protected weapons "useful in warfare," noting that this reading would lead to the "startling" result that "the National Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939." *Id.* at 624. The Court thus found it so clear that the NFA's regulations on machineguns were constitutional that it curtly dismissed the contrary notion as "startling." *Heller* explained that "*Miller* stands . . . for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons." *Id.* at 623. Specifically, the Second Amendment protects "arms 'in common use at the time' for lawful purposes like self-defense," 554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179), a "limitation . . . fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" 554 U.S. at 627

(quoting William Blackstone, 4 Commentaries on the Laws of England 148-49 (1769)).

The *Heller* Court considered the potential "object[ion]" to its reasoning "that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause" concerning the necessity of a well-regulated militia. *Id.* But the Court rebuffed this objection, explaining that "the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty." 554 U.S. at 627. The Court thus found it implicit and obvious that under its reading of the Second Amendment, "M-16 rifles and the like . . . may be banned." *Id.* As the Fifth Circuit explained, "*Heller* took it as a given that M-16s are dangerous and unusual weapons and not protected by the Second Amendment." *Hollis*, 827 F.3d at 446.

In *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010), the Supreme Court held that under the Fourteenth Amendment, the Second Amendment right to bear arms applied not only against the federal government but also against the states. A plurality also "repeat[ed]" the "assurances" from *Heller* about the limitations on the Second Amendment right, including that "the right to keep and bear arms is not a right to keep and carry any weapon whatsoever." 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626) (plurality opinion).

Finally, last year in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Court reaffirmed its analysis of the Second Amendment in *Heller*, including *Heller*'s conclusions about the limits of the types of weapons protected by the Second Amendment. *Bruen* held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 2122. In so holding, *Bruen* articulated the standard for Second Amendment challenges:

> we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2126.

The *Bruen* Court stated that it was clarifying, rather than abrogating, *Heller*'s analysis, explaining that its articulation of the governing standard was "[i]n keeping with *Heller*." *Id.* *Bruen* noted that *Heller* "relied on the historical understanding of the [Second] Amendment to demark the limits on the exercise of that right." *Id.* at 2128. Specifically, the Court found it "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons' that the Second Amendment protects the possession and use of weapons that are 'in common use at the time.'" *Id.* (quoting *Heller*, 554 U.S. at 627).[4] The Court later explained that handguns are protected by the Second Amendment because they "are weapons 'in common use' today for self-defense." *Id.* at 2134 (quoting *Heller*, 554 U.S. at 627).

In sum, the Supreme Court has held that the Second Amendment protects weapons "in common use . . . for lawful purposes like self-defense," but does not protect "dangerous and unusual weapons." *Heller*, 554 U.S. at 624, 627. The Supreme Court has further listed machineguns, and specifically the M-16 rifle, as paradigmatic examples of the type of unprotected dangerous and unusual weapons, finding it implicit that "M-16 rifles and the like[] may be banned." *Id.* at 627. And the Supreme Court's recent clarification of the Second Amendment's

---

[4] Justice Kavanaugh's concurrence, joined by Chief Justice Roberts (whose votes were necessary to form the majority in *Bruen*), explicitly quoted and reaffirmed *Heller*'s conclusion that an "important limitation on the right to keep and carry arms" was "that the sorts of weapons protected were those in common use at the time," rather than "dangerous and unusual weapons." *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *Heller*, 554 U.S. at 627).

scope stated that it was "[i]n keeping with *Heller*" and approvingly cited *Heller*'s discussion of the limitation of the Second Amendment to weapons in common use that are not dangerous and unusual. *Bruen*, 142 S. Ct. at 2126, 2128.

This Supreme Court precedent forecloses Plaintiff's claim that the Second Amendment protects his right to possess a machinegun. To be sure, courts have questioned whether *Heller*'s discussion of the limitations of the Second Amendment is holding or dicta. *Compare United States v. Rozier*, 598 F.3d 768, 771 n.6 (11th Cir. 2010) (concluding that *Heller*'s limitation of Second Amendment protections to law-abiding individuals "is not dicta"), *with Hollis*, 827 F.3d at 448 (suggesting that it "may well be right" that "some of the statements" in *Heller* about machineguns "are dicta"). But that question does not matter here, because as the Tenth Circuit previously noted in following *Heller*'s discussion of the Second Amendment's limitations, "we are 'bound by Supreme Court dicta almost as firmly as by the Courts' outright holdings, particularly when the dicta is recent and not enfeebled by later statements.'" *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125 (10th Cir. 2015) (quoting *United States v. Serawop,* 505 F.3d 1112, 1122 (10th Cir. 2007)). *Heller*'s implicit endorsement of machinegun bans is binding because it is recent and is supported, rather than enfeebled, by the Supreme Court's later statements in *Bruen*. *See Hollis*, 827 F.3d at 448 (concluding that the court was "generally bound" by *Heller*'s endorsement of machinegun bans, even if it were "dicta").

## II. Courts Have Uniformly Upheld 18 U.S.C. § 922(o)

### A. Six Courts of Appeals Have Upheld § 922(o) Since *Heller*

Since *Heller*, courts have uniformly upheld 18 U.S.C. § 922(o) and other restrictions on machineguns against Second Amendment challenges. Six courts of appeals have rejected Second Amendment challenges to § 922(o) since *Heller*. *See United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012); *United States v. One (1) Palmetto State Armory PA-15 Machinegun*

*Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 141 (3d Cir. 2016);

*Hollis*, 827 F.3d at 451; *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009); *United States*

*v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008); *Henry*, 688 F.3d at 640.

     Examining the reasoning of these decisions shows that they are consistent with *Bruen*.

*Bruen* explained that after *Heller*, "the Courts of Appeals ha[d] coalesced around a 'two-step'

framework for analyzing Second Amendment challenges that combines history with means-end

scrutiny." *Bruen*, 142 S. Ct. at 2125.  The Court concluded that "[s]tep one of the predominant

framework," at which courts would consider whether "the challenged law regulates activity falling

outside the scope of the right as originally understood," "is broadly consistent with *Heller*, which

demands a test rooted in the Second Amendment's text, as informed by history."  *Id.* at 2126-27.

But the Court rejected step two of that framework, in which courts applied "means-end scrutiny"

to assess the constitutionality of laws that implicated the Second Amendment right.  *Id.* at 2127.

     Consistent with *Bruen*, the appellate decisions upheld § 922(o) by concluding that

machineguns were outside the scope of the Second Amendment based on the Second

Amendment's text and history, including *Heller*'s analysis of text and history. *See Zaleski*, 489 F.

App'x at 475 ("the Second Amendment does not protect Zaleski's personal possession of machine

guns"); *Palmetto State Armory*, 822 F.3d at 141 ("*Heller* and subsequent decisions in our Court

make clear that the de facto ban on machine guns found in § 922(o) does not impose a burden on

conduct falling within the scope of the Second Amendment."); *Hollis*, 827 F.3d at 451

("Machineguns are dangerous and unusual and therefore not in common use.  They do not receive

Second Amendment protection, so we uphold Section 922(o)."); *Hamblen*, 591 F.3d at 474

(relying on *Heller* to conclude that "the individual right to keep and bear arms . . . does not

authorize an unlicensed individual to possess unregistered machine guns for personal use");

*Fincher*, 538 F.3d at 874 ("under *Heller,* Fincher's possession of the [machine]guns is not protected by the Second Amendment"); *Henry*, 688 F.3d at 640 ("we hold that the Second Amendment does not apply to machine guns").   None of these decisions applied means-end scrutiny, and to the extent they referenced the two-step framework, they resolved the case at step one. *See Hollis*, 827 F.3d at 451 (upholding § 922(o) "at step one of our framework"); *Henry*, 688 F.3d at 640 ("because we conclude that machine gun possession is not entitled to Second Amendment protection, it is unnecessary to consider Henry's argument that the district court applied the incorrect level of constitutional scrutiny in evaluating his claims").

The Fifth Circuit's analysis in *Hollis* is particularly instructive.  *Hollis* "glean[ed]" from *Heller* that "protected weapons are 'those in common use at the time,'" but that "[i]f a weapon is dangerous and unusual, it is not in common use and not protected by the Second Amendment," further noting that "*Heller* took it as a given that M-16s are dangerous and unusual weapons and not protected by the Second Amendment."  *Hollis*, 827 F.3d at 446 (quoting *Heller*, 554 U.S. at 627).   The court noted that it was "generally bound" by *Heller*'s statements concerning the constitutionality of machinegun bans, but it also "undert[ook] an independent inquiry" to confirm that machineguns were not protected.  827 F.3d at 448.  The court first held that machineguns were "dangerous," reasoning that like "pipebombs," machineguns are "primarily weapons of war and have no appropriate sporting use or use for personal protection."  *Id*. at 448 (quoting *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999)).   The court next held that machineguns were "unusual," noting the low number of machineguns in circulation (with just "175,977 pre–1986 civilian-owned machineguns in existence") and that 34 states prohibited most or all machineguns. *Id.* at 449-50.  The court concluded: "[m]achineguns are dangerous and unusual and therefore not in common use.  They do not receive Second Amendment protection[.]" *Id.* at 451.

These court of appeals decisions upholding § 922(o) remain strong persuasive authority that support rejecting Plaintiff's claims. As district courts within this circuit have recognized, *Bruen* does not undermine the force of pre-*Bruen* Second Amendment precedent that is consistent with its reasoning. *See United States v. Carrero*, No. 2:22-cr-00030, 2022 WL 9348792, at *4 (D. Utah Oct. 14, 2022) (finding that Tenth Circuit precedent upholding 18 U.S.C. 922(g)(1), which prohibits firearms possession by felons, "remains good law" and "[t]his court must continue to follow [it]"); *United States v. Teerlink*, No. 2:22-cr-0024-TS, 2022 WL 17093425, at *1 (D. Utah Nov. 21, 2022) (holding "that *Bruen* does not disrupt Tenth Circuit precedent upholding Section 922(g)(1) as a constitutional restriction on firearm possession under *Heller*").

### B.    Multiple District Courts Have Upheld § 922(o) Since *Bruen*

Since *Bruen*, every court to address § 922(o) or other restrictions on machineguns has upheld them. Two district courts have rejected Second Amendment challenges to § 922(o). *See United States v. Simien*, No. SA-22-cr-00379-JKP, 2023 WL 1980487, at *9 (W.D. Tex. Feb. 10, 2023) (holding that § 922(o) is "constitutional under the Second Amendment" because "machineguns are within the category of 'dangerous and unusual' weapons that do not receive Second Amendment protection"); Order, *United States v. Adamiak*, Case 2:22-cr-00047-AWA-LRL, ECF No. 46, at 9-10 (E.D. Va. Sept. 22, 2022) ("strongly disagree[ing]" with argument against constitutionality of § 922(o) and holding that "machineguns . . . are not weapons 'in common use' and thus fall outside the Second Amendment's protection"). Another district court rejected a Second Amendment challenge to the NFA's restrictions on machineguns, reaffirming prior case law holding "that there is no Second Amendment right to possess a machine gun." *United States v. Hoover*, --- F. Supp. 3d ---, 2022 WL 10524008, at *13 (M.D. Fla. Oct. 18, 2022).

*Simien*'s analysis of the constitutionality of § 922(o) is particularly instructive here. The court reasoned that, as *Heller* concluded, "dangerous and unusual weapons are not afforded Second

Amendment protection," based on a "longstanding tradition" that "grew from English common law," reflected in authorities such as Blackstone's Commentaries. *Simien*, 2023 WL 1980487, at *8 (citing 4 W. Blackstone, Commentaries on the Laws of England 148-49 (1769)). After noting that past decisions, including the Fifth Circuit's *Hollis* decision, held that machineguns were unprotected dangerous and unusual weapons, the court concluded: "Today, machineguns remain dangerous and unusual." *Id.* at *9. The court first reasoned that "[m]achineguns, which have been likened to pipe bombs and hand-grenades, are within the category of weapons of 'quasi-suspect character' that are inherently dangerous." *Id.* (quoting *Hollis*, 827 F.3d at 448). The court then concluded that machineguns "are unusual," noting that the number of registered machineguns was "less than .2% of total firearms in the United States[,]" which was "too insignificant for machineguns to be considered in common use." *Id.*

In sum, this Court need not break new ground to uphold § 922(o). Since the Supreme Court listed M-16 machineguns as the type of weapon that "may be banned" under its interpretation of the Second Amendment, *Heller*, 554 U.S. at 627, courts have uniformly rejected challenges to § 922(o) and held that machineguns are not protected by the Second Amendment. Although some of these decisions were outside the Tenth Circuit, they are highly persuasive authority on which this Court may draw in assessing the constitutionality of § 922(o).

## III.    Section 922(o) Comports with the Second Amendment Under *Bruen*'s Standard

Although *Heller*'s analysis and the uniform precedent upholding § 922(o) are sufficient to reject Plaintiff's Second Amendment claim, the same result would follow from independently applying *Bruen*'s standard for assessing Second Amendment claims. Under *Bruen*, a court must first determine whether "the Second Amendment's plain text covers an individual's conduct[.]" 142 S. Ct. at 2126. If it does, then "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* Both prongs of *Bruen*'s

14

test point in the same direction.  First, the Second Amendment's plain text does not cover possession or manufacture of a machinegun, because the Second Amendment protects the right to keep and bear arms in common use for lawful purposes like self-defense, not dangerous and unusual weapons such as machineguns.  Second, even if the Court were to determine (or assume without deciding) that § 922(o) burdens conduct covered by the Second Amendment's text, § 922(o) would still be constitutional because it is consistent with this nation's historical tradition of prohibiting the carrying of dangerous and unusual weapons.[5]

**A.**     **The Second Amendment's Plain Text Does Not Cover Possession of a Machinegun**

The Second Amendment's text does not cover possession of a machinegun because the Second Amendment's protection extends only to weapons in common use for lawful purposes, not dangerous and unusual weapons.  The Second Amendment's text reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  The phrase "right of the people to keep and bear arms" in the Second Amendment's text refers to "a *pre-existing* right" that the Second Amendment "codified," but it was well understood at the founding that "the right was not a right to keep and carry any weapon whatsoever[.]" *Heller*, 554 U.S. at 592, 626.  Rather, "the sorts of weapons protected were those 'in common use at the time,'" *id.* at 627 (quoting *Miller*, 307 U.S. at 179), not "dangerous and unusual weapons."  554 U.S. at 627 (quoting 4 W. Blackstone, Commentaries

---

[5] *Bruen* treated the inquiry of whether a particular type of weapon can be restricted as implicating both prongs of *Bruen*'s test.  Under the first prong, in addressing whether New York's requirement for proper cause for a license to carry a handgun was covered by the Second Amendment's plain text, the Court reasoned that the parties did not dispute that "handguns are weapons 'in common use' today for self-defense."  142 S. Ct. at 2134 (quoting *Heller*, 554 U.S. at 627).  At the second prong, the Court considered and rejected New York's argument that its proper cause requirement was supported by the historical tradition of prohibiting carrying of dangerous and unusual weapons.  *Id.* at 2143.

on the Laws of England 148-49 (1769)).  That reading of the Second Amendment's text is supported by the prefatory clause's reference to "[a] well regulated militia," because at the founding, "[t]he traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense."  554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179).

      Machineguns are not encompassed within the scope of the right guaranteed by the Second Amendment's text because they are dangerous and unusual weapons, which are not in common use for lawful purposes like self-defense.  *See generally supra*, Part II (describing cases holding that machineguns are not protected by the Second Amendment).  It can hardly be disputed that machineguns are dangerous.  Machineguns, and M-16 rifles in particular, are weapons of war.  *See Heller*, 554 U.S. at 627 (M-16 rifles are among the "most useful in military service"); *Henry*, 688 F.3d at 640 (the machine gun was "widely used during World War I, where it 'demonstrated its murderously effective firepower over and over again'") (quoting William Rosenau, *The Origins of the First Modern Weapon,* TECH. REV. (1987), at 74  (reviewing John Ellis, *The Social History of the Machine Gun* (1986))); Compl. ¶ 13 (M-16 rifles are the U.S. military's "standard small-arms weapons").  "A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds.  Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machineguns."  *Henry*, 688 F.3d at 640 (internal citation omitted); *see also Simien*, 2023 WL 1980487, at *9 ("Machineguns, which have been likened to pipe bombs and hand-grenades, are within the category of weapons of 'quasi-suspect character' that are inherently dangerous.") (quoting *Hollis*, 827 F.3d at 448).

      Machineguns are also unusual and not in common use for lawful purposes like self-defense.

Congress heavily regulated machineguns soon after they became widely available precisely because their primary use outside of military and law enforcement was in violent crime, and they were not suitable for lawful purposes such as self-defense. As the House Report for the NFA states: "The growing frequency of crimes of violence in which people are killed or injured by the use of dangerous weapons needs no comment. The gangster as a law violator must be deprived of his most dangerous weapon, the machine gun." *See* H.R. Rep. No. 73-1780, at 1 (1934). The report also differentiated machineguns from those weapons useful for self-defense, explaining: "But while there is justification for permitting the citizen to keep a pistol or revolver for his own protection without any restriction, there is no reason why anyone except a law officer should have a machine gun or sawed-off shotgun." *Id.* When Congress banned most machineguns in 1986, the legislative history discussed how machineguns were "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime." *United States v. Wilks*, 58 F.3d 1518, 1519 (10th Cir. 1995) (quoting H.R. Rep. No. 99-495, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1330). Congress also found that FOPA "reaffirm[ed]" that it was "not the purpose" of the GCA (as amended by FOPA) to restrict the rights of "law-abiding citizens" to possess or use "firearms appropriate to the purpose of . . . personal protection, or any other lawful activity," and that FOPA was "not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes." Pub. L. No. 99-308 § 1(b)(2), 100 Stat. 449 (1986). Congress thus did not believe that banning privately-held machineguns (except for grandfathered weapons) would burden the "use of firearms by law-abiding citizens for lawful purposes," including "personal protection." *Id.*; *see also Hollis*, 827 F.3d at 448 (machineguns are "primarily weapons of war and have no appropriate sporting use or use for personal protection" (quoting *Jennings*, 195 F.3d at 799 n.4)).

17

Since 1986, machineguns have been banned apart from those possessed under the authority of government or grandfathered existing weapons. 18 U.S.C. § 922(o). In addition to the federal government banning most machineguns, at least 35 states and the District of Columbia generally ban machineguns,[6] which supports the conclusion that machineguns are unusual and not in common use.[7] The rarity of machineguns in private hands further shows that machineguns are not protected by the Second Amendment. *See Hollis*, 827 F.3d at 449-50; *Simien*, 2023 WL 1980487, at *9.

The arguments in Plaintiff's Complaint for the unconstitutionality of § 922(o) are incorrect. First, Plaintiff argues that *Bruen* "clarified that a class of arms categorized as 'dangerous and

---

[6] *See* Alaska Stat. § 11.61.200; Ariz. Rev. Stat. §§ 13-3101, 13-3102; Cal. Penal Code § 32625; Colo. Rev. Stat. § 18-12-102; Del. Code tit. 11, § 1444; D.C. Code § 22-4514; Fla. Stat. § 790.221; Ga. Code Ann. § 16-11-122; Haw. Rev. Stat. § 134-8; 720 Ill. Comp. Stat. 5/24-1; Ind. Code § 35-47-5-8; Iowa Code §§ 724.1, 724.3; Kan. Stat. § 21-6301; La. Stat. § 40:1752; Me. Rev. Stat. Ann. tit. 17-A, § 1051; Mass. Gen. Laws ch. 140, § 131; Mich. Comp. Laws § 750.224; Minn. Stat. § 609.67; Mo. Ann. Stat. § 571.020; Neb. Rev. Stat. § 28-1203; Nev. Rev. Stat. § 202.350; N.J. Stat. § 2C:39-5; N.Y. Penal Law § 265.02; N.C. Gen. Stat. § 14-409; N.D. Cent. Code § 62.1-05-01; Ohio Rev. Code Ann. §§ 2923.11, 2923.17; Or. Rev. Stat. § 166.272; 18 Pa. Stat. and Cons. Stat. § 908; 47 R.I. Gen. Laws § 11-47-8; S.C. Code Ann. § 16-23-230; S.D. Codified Laws §§ 22-1-2, 22-14-6; Tenn. Code Ann. § 39-17-1302; Tex. Penal Code Ann. § 46.05; Wash. Rev. Code § 9.41.190; W. Va. Code § 61-7-9; Wis. Stat. § 941.26. Many of these state laws have exceptions, such as for machinegun possession for military or law enforcement purposes. *See*, *e.g.*, D.C. Code § 22-4514(a). Some, but not all, of these state laws have exceptions or affirmative defenses for machineguns possessed in compliance with federal law or limit the prohibition to machineguns possessed in violation of federal law. *See*, *e.g.*, Me. Rev. Stat. Ann. 17-A, § 1052 ("Machine guns . . . possessed in accordance with the National Firearms Act, as amended, shall be exempt from this chapter."); Mo. Ann. Stat. § 571.020(6) (prohibiting machinegun possession "in violation of federal law"); Or. Rev. Stat. § 166.272(4) ("It is an affirmative defense to a charge of violating subsection (1) of this section that the machine gun . . . was registered as required under federal law.").

[7] In 2016, the Fifth Circuit concluded that the fact that 34 states and the District of Columbia prohibited possession of most machineguns (either directly or by incorporating federal prohibitions) supported the constitutionality of § 922(o). *See Hollis*, 827 F.3d at 450. *Hollis* apparently omitted Hawaii from its list of states that ban machineguns, *see id.* at 450 n.8, perhaps because Hawaii's machinegun ban uses the phrase "automatic firearms" rather than "machineguns." Haw. Rev. Stat. § 134-8(a).

unusual' cannot be banned if they are in 'common use.'" Compl. ¶ 17.  Not so.  *Bruen* treated "common use" and "dangerous and unusual" as two sides of the same coin, explaining that "the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' *as opposed to those* that 'are highly unusual in society at large.'"  142 S. Ct. at 2143 (emphasis added) (quoting *Heller*, 554 U.S. at 627); *see also Heller*, 554 U.S. at 627 (the limitation that the Second Amendment protects weapons "in common use at the time . . . is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons") (quotations and citations omitted).  Therefore, "[i]f a weapon is dangerous and unusual, it is not in common use and not protected by the Second Amendment."  *Hollis*, 827 F.3d at 446.  Plaintiff cites language from *Bruen* stating that "even if these colonial laws prohibited the carrying of handguns because they were considered 'dangerous and unusual weapons' in the 1690s, they provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today." Compl. ¶ 17 (quoting *Bruen*, 142 S. Ct. at 2143).  This language is best read to suggest that the status of handguns may have changed since the colonial era, not that weapons can be protected as "in common use" even if they are "dangerous and unusual."

Second, Plaintiff contends that the M-16 rifle is "in common use" because it is the "standard small-arms weapon used by the United States military."  *See id*. ¶ 18.  But use by the military is the wrong metric.  *Heller* squarely rejected the argument that "weapons useful in warfare are protected[,]" finding such a reading "startling" because it would suggest the unconstitutionality of "restrictions on machineguns[.]"  554 U.S. at 624.  And both *Heller* and *Bruen* clarified that the relevant inquiry for "common use" is whether weapons are "'in common use at the time' for lawful purposes like self-defense."  *Id.*; *Bruen*, 142 S. Ct. at 2134 (handguns are protected because they are "weapons 'in common use' today for self-defense").  The Second

Amendment does not confer upon individuals a right to possess and carry advanced military weaponry.  What matters in determining whether a weapon qualifies for Second Amendment protection is whether it is commonly used by private individuals for lawful purposes like self-defense.  Machineguns are not.

Third, Plaintiff cites an ATF report, which states that there were 741,146 registered machineguns as of May 2021, as support for the conclusion that machineguns are in common use.  *See* ATF, *Firearms Commerce in the United States – Annual Statistical Update 2021*, at 15-16 (2021), *available at* https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download (cited in Compl. ¶ 18 n.2).  But as one district court explained in rejecting an argument based on that ATF report, the number of registered machineguns "is less than .2% of total firearms in the United States," which "remains too insignificant for machineguns to be considered in common use."  *Simien*, 2023 WL 1980487, at *9.  Further, the two statutory exceptions that allow a machinegun to be possessed (and therefore registered) are machineguns possessed or transferred under the authority of a government agency, 18 U.S.C. § 922(o)(2)(A), or those lawfully possessed before May 19, 1986, *id.* § 922(o)(2)(B).  Plaintiff makes no factual allegations that reasonably support the inference that these registered machineguns are used by private individuals for lawful purposes like self-defense, as opposed to being possessed by governments or as antique collector's items.

## B.    Section 922(o) Is Consistent with Historical Tradition

That possession of machineguns is not protected by the Second Amendment's plain text suffices to demonstrate § 922(o)'s constitutionality.  But if the Court advances to *Bruen*'s second prong, then § 922(o) "is consistent with this Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2126.

*Heller* largely settled the question of historical tradition, holding that a "historical tradition"

exists "of prohibiting the carrying of dangerous and unusual weapons," which "fairly support[s]" limiting the Second Amendment's protection to "the sorts of weapons . . . in common use at the time." 554 U.S. at 627 (quotations omitted).  In support of its conclusion about historical tradition, *Heller* cited the following authorities:

> *See* 4 Blackstone 148-149 (1769); 3 B. Wilson, Works of the Honourable James Wilson 79 (1804); J. Dunlap, The New–York Justice 8 (1815); C. Humphreys, A Compendium of the Common Law in Force in Kentucky 482 (1822); 1 W. Russell, A Treatise on Crimes and Indictable Misdemeanors 271–272 (1831); H. Stephen, Summary of the Criminal Law 48 (1840); E. Lewis, An Abridgment of the Criminal Law of the United States 64 (1847); F. Wharton, A Treatise on the Criminal Law of the United States 726 (1852).  *See also State v. Langford,* 10 N.C. 381, 383–384 (1824); *O'Neill v. State,* 16 Ala. 65, 67 (1849); *English v. State,* 35 Tex. 473, 476 (1871); *State v. Lanier,* 71 N.C. 288, 289 (1874).

*Heller*, 554 U.S. at 627.

The sources cited by *Heller* show that carrying dangerous and unusual weapons was widely considered a crime in England and in the early American republic.  For example, Blackstone explained that "[t]he offense of riding or going armed, with dangerous or unusual weapons, is a crime against the public peace, by terrifying the good people of the land; and is particularly prohibited by the statute of Northampton, 2 Edw. III. c. 3."  4 W. Blackstone, Commentaries on the Laws of England 148-49; *see also*, *e.g.*, J. Dunlap, The New–York Justice 8 (stating that "for a man to arm himself with dangerous and unusual weapons" was a criminal "affray, at common law"); C. Humphreys, A Compendium of the Common Law in Force in Kentucky 482 ("Riding or going armed with dangerous and unusual weapons, is a crime against the public peace . . . .").

Of course, the modern machinegun did not exist at the time of ratification of the Second Amendment in 1791 or the Fourteenth Amendment in 1868, so there are no laws from those time periods specifically addressing machineguns.  But *Bruen* requires a "historical *analogue*, not a historical *twin*" 142 S. Ct. at 2133, to sustain modern firearms regulations.  Modern regulations restricting dangerous and unusual weapons of today are "relevantly similar" to historical

21

prohibitions on the carriage of dangerous and unusual weapons of earlier eras. *Id*. at 2132. The key question is the same question underlying whether machineguns are covered by the Second Amendment's text: whether machineguns are "dangerous and unusual weapons." For the reasons explained above, *see supra*, pp. 16-20, machineguns are dangerous and unusual weapons that may be banned consistent with historical tradition.

## IV.   The Complaint Does Not State an Article I Claim

It is unclear whether Plaintiff intended to plead a claim that § 922(o) exceeds the scope of Congress's powers under Article I. The Complaint's introductory paragraphs contain two brief assertions that § 922(o) "exceed[s] the power of the United States under Article I of the United States Constitution," and "violat[es] . . . Article I." Compl. ¶¶ 1-2. However, the Complaint contains no further references to Article I, and the Complaint's sole claim is labeled as a claim for violation of the Second Amendment, not Article I.

If the Court generously construes the Complaint to contain a claim that § 922(o) transgresses Article I, such a claim would be foreclosed by binding precedent. In *United States v. Haney*, 264 F.3d 1161, 1166-71 (10th Cir. 2001), the Tenth Circuit held that § 922(o) was a valid exercise of Congress's Article I power to regulate interstate commerce. *See* U.S. Const. art. I, § 8, cl. 3.[8] No subsequent Tenth Circuit or Supreme Court decision undermines *Haney*'s authority. Accordingly, any Article I claim would fail as a matter of law.

## V.   DeWilde Lacks Authority to Represent the Trust *Pro Se*

DeWilde, who does not claim to be a licensed attorney, filed the Complaint *pro se*, purportedly "[i]ndividually and as Trustee of the DeWilde Arms Trust." Compl. at p. 1. But the law is well-established that a non-attorney cannot represent a trust *pro se*, even if he is the trustee.

---

[8] So have at least eight other circuits. *See Henry*, 688 F.3d at 641-42 & n.4 (holding that § 922(o) was constitutional under the Commerce Clause and collecting other cases so holding).

*See United States v. Lain*, 773 F. App'x 476, 477 (10th Cir. 2019) (non-attorney "cannot represent the trust's interests because he lacks the authority to practice law"); *see also United States v. Lain*, No. 17-cv-113-J, 2018 WL 8244912, at *2 (D. Wyo. Dec. 28, 2018) ("With respect to the right of a pro se trustee to appear on behalf of a trust, courts have uniformly held that a non-attorney trustee may not represent a trust in federal court."), *aff'd* 773 F. App'x 476.  Therefore, unless a licensed attorney appears on behalf of the Trust, the Court should dismiss Plaintiff's claims insofar as they are brought on behalf of the Trust for the additional, independent reason that DeWilde lacks authority to represent the Trust.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint for failure to state a claim.

Dated this 13th day of March 2023

Respectfully Submitted,

NICHOLAS VASSALLO
United States Attorney


By:   */s/ Jeremy A. Gross*
      JEREMY A. GROSS
      Assistant United States Attorney

      BRIAN M. BOYNTON
      Principal Deputy Assistant Attorney General

      LESLEY FARBY
      Assistant Branch Director

      JEREMY S.B. NEWMAN
      Trial Attorney
      Civil Division, Federal Programs Branch
      U.S. Department of Justice
      1100 L St. NW
      Washington, DC 20005
      Phone: (202) 532-3114
      Email: jeremy.s.newman@usdoj.gov