NICHOLAS VASSALLO
United States Attorney
JEREMY A. GROSS (WY Bar #7-5110)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY  82003-0668
Telephone: 307-772-2124
jeremy.gross@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

JEREMY S.B. NEWMAN (*PRO HAC VICE*)
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L St. NW
Washington, DC 20005
Phone: (202) 532-3114
jeremy.s.newman@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| Jake Stanley De Wilde, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-00003-SWS |
| | ) | |
| Attorney General of the United States; | ) | |
| Director of the Bureau of Alcohol, | ) | |
| Tobacco, Firearms, and Explosives, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS AMENDED COMPLAINT AND OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION......................................................................................................1

ARGUMENT...........................................................................................................1

I.     The Court Should Grant Defendants' Motion to Dismiss ...............................1

       A.    Plaintiff Misreads Applicable Supreme Court Precedent....................................1

       B.    Plaintiff Fails to Counter the Uniform Case Law Upholding Section 922(o)..........................................................................................................6

       C.    Section 922(o) Satisfies *Bruen*'s Second Amendment Test.............................10

II.    Plaintiff Is Not Entitled to Summary Judgment............................................17

CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Becker v. Bateman,*
709 F.3d 1019 (10th Cir. 2013)................................................................17

*Bonidy v. United States Postal Service,*
790 F.3d 1121 (10th Cir. 2015)..................................................................7

*Caetano v. Massachusetts,*
577 U.S. 411 (2016)..................................................................................13

*Diné Citizens Against Ruining Our Env't v. Haaland,*
59 F.4th 1016 (10th Cir. 2023)................................................................18

*District of Columbia v. Heller,*
554 U.S. 570 (2008)..........................................................................*passim*

*Dobbs v. Anthem Blue Cross & Blue Shield,*
600 F.3d 1275 (10th Cir. 2010)..................................................................7

*Firearms Policy Coal., Inc. v. McCraw,*
No. 4:21-CV-1245-P, 2022 WL 3656996 (N.D. Tex. Aug. 25, 2022)......................9

*Gee v. Pacheco,*
627 F.3d 1178 (10th Cir. 2010)................................................................12

*Guzzo v. Mead,*
No. 14–CV–200, 2014 WL 5317797 (D. Wyo. Oct. 17, 2014)..............................7

*Hollis v. Lynch,*
827 F.3d 436 (5th Cir. 2016)..........................................................4, 7, 13

*Johnson v. Weld Cnty., Colo.,*
594 F.3d 1202 (10th Cir. 2010)................................................................19

*Monsanto Co. v. Geertson Seed Farms,*
561 U.S. 139 (2010)..................................................................................18

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
142 S. Ct. 2111 (2022).......................................................................*passim*

*Reese v. Bureau of Alcohol Tobacco Firearms & Explosives,*
No. 6:20-CV-01438, 2022 WL 17859138 (W.D. La. Dec. 21, 2022), *appeal filed*, No. 23-30033 (5th Cir. Jan. 13, 2023)........................................................9

*United States v. Henry,*
688 F.3d 637 (9th Cir. 2012)................................................................8, 16

*United States v. Holton*,
  No. 3:21-CR-0482-B, 2022 WL 16701935 (N.D. Tex. Nov. 3, 2022)....................................9

*United States v. McCane*,
  573 F.3d 1037 (10th Cir. 2009)............................................................................................7

*United States v. Miller*,
  307 U.S. 174 (1939)..............................................................................................1, 2, 15

*United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame,
Unknown Caliber Serial No. LW001804*,
  822 F.3d 136 (3d Cir. 2016) ................................................................................................8

*United States v. Price*,
  No. 2:22-CR-00097, 2022 WL 6968457 (S.D.W. Va. Oct. 12, 2022)....................................9

*United States v. Quiroz*,
  No. PE:22-CR-00104-DC, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022), *appeal filed*,
  22-50834 (5th Cir. Sep. 21, 2022)........................................................................................9

*United States v. Simien*,
  No. SA-22-CR-00379-JKP, 2023 WL 1980487 (W.D. Tex. Feb. 10, 2023)......................9, 12

*United States v. Teerlink*,
  No. 2:22-cr-0024-TS, 2022 WL 17093425 (D. Utah Nov. 21, 2022)....................................7

*United States v. Thompson/Ctr. Arms Co.*,
  504 U.S. 505 (1992)............................................................................................................16

*United States v. Wilks*,
  58 F.3d 1518 (10th Cir. 1995).............................................................................................16

*Weidenbach v. Casper-Natrona Cnty. Health Dep't*,
  563 F. Supp. 3d 1170 (D. Wyo. 2021)..................................................................................17

**Constitutions**

U.S. Const. amend. II.............................................................................................................15

**Statutes**

18 U.S.C. § 922...........................................................................................................*passim*

**Legislative Materials**

H.R. Rep. No. 73-1780 (1934) ........................................................................................12, 16

H.R. Rep. No. 495, 99th Cong., 2d Sess. 4 (1986).....................................................................16

**Rules**

Fed. R. Evid. 801(c)...............................................................................................................19

Fed. R. Evid. 802...................................................................................................................19

Fed. R. Civ. P. 56(a)..............................................................................................................17

U.S.D.C.L.R. 7.1(b)(2)(D).....................................................................................................19

**Other Authorities**

NSSF, *Commonly Owned: NSSF Announces Over 24 Million MSRs in Circulation*
(July 20, 2022),
    https://www.nssf.org/articles/commonly-owned-nssf-announces-over-24-million-
    msrs-in-circulation/.....................................................................................................19

## INTRODUCTION

Pursuant to this Court's Order of April 13, 2023 (ECF No. 23), Defendants hereby submit this combined Reply Brief in Support of Defendants' Motion to Dismiss and Opposition to Plaintiff's Motion for Summary Judgment.

Plaintiffs' combined motion to dismiss opposition and summary judgment brief, ECF No. 21 ("Pl. Br.") fails to rebut the arguments in Defendants' motion to dismiss memorandum, ECF No. 17 ("Mem."), showing that 18 U.S.C. § 922(o) is constitutional.   Plaintiff misinterprets Supreme Court precedent that forecloses his claim and fails to explain away the uniform lower court authority rejecting Second Amendment challenges to § 922(o).   Under the test set forth in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), machinegun possession is not protected by the Second Amendment's text because machineguns are not in common use for lawful purposes such as self-defense, and § 922(o) is consistent with the historical tradition of prohibiting carrying dangerous and unusual weapons.

Because § 922(o) is constitutional, Plaintiff is not entitled to summary judgment on his claim that § 922(o) violates the Second Amendment.  Besides this core legal deficiency, Plaintiff's summary judgment motion is improper because he fails to set forth or apply the legal standard for summary judgment, does not include a numbered statement of facts, makes no attempt to show entitlement to injunctive relief, and makes speculative and unsupported factual assertions based on inadmissible hearsay.

## ARGUMENT

I. **The Court Should Grant Defendants' Motion to Dismiss**

A. **Plaintiff Misreads Applicable Supreme Court Precedent**

In a series of cases, the Supreme Court has explained which types of weapons fall within and outside the scope of the Second Amendment. *See United States v. Miller*, 307 U.S. 174 (1939);

*District of Columbia v. Heller*, 554 U.S. 570 (2008); *Bruen*, 142 S. Ct. 2111. Together, these cases establish that the Second Amendment protects weapons that are in common use for lawful purposes such as self-defense, but that dangerous and unusual weapons are not protected. *See generally* Mem. 6-10. These cases show that machineguns such as the M-16 rifle are within the class of unprotected weapons that may be restricted or even banned, consistent with the Second Amendment. *Id*. at 10-11.

In arguing that these cases support his position, Plaintiff misinterprets the holdings and reasoning of these cases. Plaintiff argues that under *Miller*, weapons that are "part of the ordinary military equipment" and "common[ly] use[d]" in the military are protected by the Second Amendment. Pl. Br. 3. But in *Heller*, the Supreme Court rejected that reading of *Miller*, reasoning: "Read in isolation, *Miller*'s phrase 'part of ordinary military equipment' could mean that only those weapons useful in warfare are protected. That would be a startling reading of the opinion, since it would mean that the National Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939." *Heller*, 554 U.S. at 624. Plaintiff suggests that the Court rejected the notion that *only* ordinary military equipment is protected, concluding instead that military *and* civilian weapons are protected. Pl. Br. 4. But the Court found the rejected reading "startling" precisely because it would invalidate restrictions on useful military weaponry such as machineguns.[1] *Heller* instead held that the Second Amendment protects "arms 'in common use at the time' *for lawful purposes like self-defense*," because those were the types of weapons that members of the militia brought to militia service in the founding era. *Heller*, 554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179) (emphasis added).

---

[1] Plaintiff's argument that the Supreme Court did not intend to reject the reading it dismissed as "startling," *see* Pl. Br. 15 ("Justice Scalia did not say that judges could not find 'startling' conclusions"), is fanciful and finds no support in the rest of the Supreme Court's opinion.

*Heller* therefore made the relevant metric common use for civilian purposes such as self-defense, not military usage.  Plaintiff's erroneous argument that ordinary military equipment is protected by the Second Amendment also has no limiting principle and could result in highly destructive weapons such as Javelin anti-tank missiles being protected.

Plaintiff's reading of the passage of *Heller* explaining that M-16 rifles "may be banned" is equally unconvincing.  The Supreme Court reasoned:

> It may be objected that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause.  But as we have said, the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty.  It may well be true today that a militia, to be as effective as militias in the 18th century, would require sophisticated arms that are highly unusual in society at large.  Indeed, it may be true that no amount of small arms could be useful against modern-day bombers and tanks.  But the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right.

*Id.* at 627-28.  Plaintiff twists *Heller* in arguing that *Heller* "defended" the hypothetical objection to the conclusion that M-16 rifles were unprotected.  Pl. Br. 17.  In fact, *Heller* rebutted this objection by explaining that despite the lack of protection for modern military weapons such as M-16 rifles, the Second Amendment right was not completely detached from the prefatory clause concerning the militia, because members of the militia in the founding era used the weapons they possessed at home for militia duty.  It is true that the subsequent divergence between commonly used weapons and the sort of weapons necessary for effective military service "have limited the degree of fit between the prefatory clause and the protected right," but the Supreme Court emphatically stated that this divergence "cannot change our interpretation of the right."  *Heller*,

554 U.S. at 628.  Sophisticated military weaponry that is "highly unusual in society at large" is not protected, even if it is commonly used in the military.  *Id*. at 627.[2]

The Fifth Circuit accurately synthesized *Heller*'s analysis:

> *Heller*, therefore, distinguished between two classes of weapons: (1) those that are useful in the militia or military, and (2) those that are "possessed at home" and are in "common use at the time for lawful purposes like self-defense."  The individual right protected by the Second Amendment *applies only to the second category of weapons*, though that category at times may overlap with the first. The Second Amendment does not create a right to possess a weapon solely because the weapon may be used in or is useful for militia or military service.

*Hollis v. Lynch*, 827 F.3d 436, 445 (5th Cir. 2016) (internal citation omitted).  Plaintiff misreads *Heller* in arguing that it protects both categories of weapons.

Finally, Plaintiff misreads *Bruen* in asserting that *Bruen* supports his claim.  *Bruen* generally reaffirmed *Heller*, including *Heller*'s limitation of Second Amendment protection to weapons in common use for self-defense, as opposed to dangerous and unusual weapons.  Mem. 9-10.  Plaintiff argues incorrectly that "*Bruen* specifically declared that arms in 'common use' cannot be banned, even if they were found to be 'dangerous and unusual.'"  Pl. Br. 11.  But as Defendants already explained, *Bruen* did not treat "common use" and "dangerous and unusual" as separate inquiries; under *Bruen* (as under *Heller*), if a class of weapons is "dangerous and unusual," then it necessarily is not "in common use" and is not protected.  Mem. 19-20; *see Bruen*, 142 S. Ct. at 2143 ("the Second Amendment protects only the carrying of weapons that are those 'in

---

[2] Plaintiff argues that *Heller* protected machineguns by not including machinegun bans in a non-exhaustive list of "presumptively lawful" regulations.  Pl. Br. 16; *see Heller*, 554 U.S. at 626-27 & n.26.  But in the paragraph immediately following that passage, the Supreme Court "recognize[d] another important limitation on the right to keep and carry arms": that "the sorts of weapons protected were those in common use at the time," a limitation "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons."  *Heller*, 554 U.S. at 627 (quotations and citations omitted).

common use at the time,' *as opposed to those* that 'are highly unusual in society at large'")
(emphasis added).

Plaintiff also argues that *Bruen* endorsed the approach of an online paper that argued that
the historical tradition of restricting "dangerous and unusual weapons" extended only to the
manner of carrying weapons and not to classes of weapons that were unprotected by the Second
Amendment. Pl. Br. 10, 21, 27 (citing Daniel Page, *Dangerous and Unusual Misdirection* (2011),
Pl. Br., Ex. H). That paper acknowledges that *Heller* "embraced" what the author contended was
a "historically inaccurate definition of 'dangerous and unusual weapons,'" that is, that certain
classes of weapons are not protected. Pl. Br., Ex. H, at 32. *Bruen* did not cite, let alone mention,
the Page article, and Plaintiff is wrong that *Bruen* discarded *Heller*'s reasoning in favor of the Page
article's reasoning.

Contrary to Plaintiff's argument, *Bruen* reaffirmed *Heller*'s conclusion that the Second
Amendment does not protect classes of weapons that are dangerous and unusual. In *Bruen*, the
Court rejected the argument that historical statutes setting forth the crime of affray "bann[ed] the
public carry of all firearms." 142 S. Ct. at 2143. The Supreme Court explained that these affray
statutes did not "ban[] the carrying of any class of firearms," meaning that they did not provide
that carrying of any firearm at all was a crime; rather, they "codified the existing common-law
offense of bearing arms to terrorize the people[.]" *Id.* But *Bruen* also acknowledged that such
statutes "prohibited the carrying of 'dangerous and unusual weapons[,]'" *id.*, which supports the
conclusion "that the Second Amendment protects only the carrying of weapons that are those 'in
common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Id.*
(quoting 554 U.S. at 627); *see also id.* at 2162 (Kavanaugh, J. concurring, joined by Roberts, C.J.)
(endorsing this analysis from *Heller*: "[T]he sorts of weapons protected were those in common use

at the time.  We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons.") (citation omitted).  *Bruen* therefore reaffirmed *Heller*'s conclusion that "dangerous and unusual weapons" are classes of weapons that are unprotected by the Second Amendment.  *Bruen* merely rejected the argument that *all* firearms fall within the category of unprotected dangerous and unusual weapons.[3]

### B.   Plaintiff Fails to Counter the Uniform Case Law Upholding Section 922(o)

Plaintiff does not dispute Defendants' showing that six Courts of Appeals have upheld § 922(o) since *Heller*, four district courts have upheld § 922(o) or the National Firearms Act's (NFA) machinegun restrictions since *Bruen*, and no court has ever held that § 922(o) violates the Second Amendment.  Mem. 11-15.  But Plaintiff argues that all of these cases either were incorrectly decided or are no longer good law.  Pl. Br. 17-22.  Plaintiff is wrong.  These decisions properly analyzed the scope of the Second Amendment based on text and history, and they are highly persuasive authority for rejecting Plaintiff's claim here.

### 1.   Court of Appeals cases upholding § 922(o) remain good law

As Defendants showed, each post-*Heller* Court of Appeals decision upholding § 922(o) concluded that machineguns were beyond the scope of the Second Amendment based on analysis of "the Second Amendment's text, as informed by history," an inquiry "broadly consistent with *Heller*" and *Bruen*'s clarification of *Heller*.  *Bruen*, 142 S. Ct. at 2127; Mem. 11-12.  Plaintiff does not dispute Defendants' showing that none of these decisions advanced to step two of the

---

[3] Plaintiff misunderstands the Court's statement in *Bruen* that historical affray statutes did not "ban[] the carrying of any class of firearms." *Bruen*, 142 S. Ct. at 2143.  Plaintiff misreads this statement as signifying that these statutes banned the carrying of no classes of firearms, *see* Pl. Br. 10, 18, 21, but read in context, the Court merely conveyed that the statutes did not ban the carrying of all classes of firearms. *See Bruen*, 142 S. Ct. at 2143 (noting respondents' argument, which the Court rejected, that "bearing any offensive weapons, including firearms" violated affray statutes).

predominant pre-*Bruen* framework to employ means-end scrutiny of the type that *Bruen* repudiated. Mem. 12.

Plaintiff's main attack on these decisions is that they were based "on *Heller*'s analysis" and purportedly did not "perform[] an independent analysis" of the Second Amendment's text and history. Pl. Br. 17. To the extent that these decisions drew upon the Supreme Court's analysis, that bolsters, rather than undermines, their validity. Lower courts can rely on reasoning from recent Supreme Court case law that is directly on point without replicating the Supreme Court's analysis. Indeed, in *Bonidy v. United States Postal Service*, 790 F.3d 1121, 1125 (10th Cir. 2015), the Tenth Circuit concluded that *Heller*'s analysis of the limitations of the Second Amendment was binding. Plaintiff urges this Court to reject *Bonidy* as unpersuasive, Pl. Br. 16, but "[w]hile the Tenth Circuit's decisions . . . may be publicly debated, one thing remains undebatable: '[A] district court is bound by decisions made by its circuit court.'" *Guzzo v. Mead*, No. 14–CV–200, 2014 WL 5317797, at *1 (D. Wyo. Oct. 17, 2014) (quoting *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1279 (10th Cir. 2010)). Even after *Bruen*, district courts in this Circuit continue to treat as binding Tenth Circuit precedent that upheld firearms laws based on *Heller*'s analysis of text and history. *See* Mem. 13; *United States v. Teerlink*, No. 2:22-cr-0024-TS, 2022 WL 17093425, at *1 & n.14 (D. Utah Nov. 21, 2022) (adhering to *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009)). Plaintiff does nothing to refute this.

Moreover, Plaintiff is wrong to assert that each of these appellate decisions was "based *only* on *Heller*'s analysis," and not on "independent analysis." Pl. Br. 17. After discussing *Heller*'s analysis, several of these decisions conducted independent analysis, grounded in text and history, to confirm that machineguns were not protected by the Second Amendment. *See Hollis*, 827 F.3d at 448-451 ("undertak[ing] an independent inquiry as to whether machineguns are

protected by the Second Amendment"); *see also United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 142-44 (3d Cir. 2016) (analyzing history of machinegun regulations and relevant precedent to conclude that machineguns were unprotected); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) (analyzing the history of machineguns to conclude that § 922(o) fell within "historical tradition").

At bottom, Plaintiff's disagreement with these appellate decisions rests on his misreading of *Heller* and *Bruen*. For example, Plaintiff disagrees with the appellate decisions' conclusions that machineguns are unprotected "dangerous and unusual weapons" by arguing that under *Heller* and *Bruen*, the historical tradition of restricting dangerous and unusual weapons extends only to the manner of carry and not to classes of weapons. Pl. Br. 18-19. But as described above, that is wrong: *Bruen* reaffirmed *Heller*'s conclusion that classes of weapons that are dangerous and unusual are unprotected by the Second Amendment. *See supra*, pp. 5-6. Plaintiff also criticizes decisions concluding that machineguns are not in common use because they focus on "civilian-owned arms." Pl. Br. 19. But as explained, under *Heller* and *Bruen*, the metric for "common use" is use for civilian purposes such as self-defense, not military usage. *See supra*, pp. 2-4.

2. *Recent district court decisions upholding § 922(o) correctly applied* Bruen

Plaintiff's attack on the post-*Bruen* district court cases upholding § 922(o) and other machinegun restrictions fares no better than his attack on post-*Heller* appellate cases. Plaintiff admits that these cases "acknowledge[d] . . . the clarified *Bruen* standards," but nonetheless argues that they "*still* did not comply with *Bruen*." Pl. Br. 20. Plaintiff criticizes these decisions for concluding, based on *Heller* and *Bruen*, that the Second Amendment protects weapons "in common use," but not "dangerous and unusual weapons." *Id*. at 21. Again, those cases' reading of *Heller* and *Bruen* is entirely correct. It is Plaintiff who misreads *Heller* and *Bruen* in arguing that dangerous and unusual weapons can only be restricted if carried in a certain manner. *See*

*supra*, pp. 5-6.  *Heller*'s conclusion that dangerous and unusual weapons are unprotected was based on "historical tradition," 554 U.S. at 627, making it entirely consistent with *Bruen*'s test rooted in "historical tradition," *Bruen,* 142 S. Ct. at 2126.  Therefore, the district court cases cited by Defendants faithfully applied *Bruen* in concluding that machineguns were "dangerous and unusual weapons" unprotected by the Second Amendment.  *See* Mem. 13-14.

Plaintiff gets no further in arguing that three district court decisions holding other firearms laws unconstitutional properly applied *Bruen*.  *See* Pl. Br. 24-25 (citing *Firearms Policy Coal., Inc. v. McCraw*, No. 4:21-CV-1245-P, 2022 WL 3656996 (N.D. Tex. Aug. 25, 2022); *United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457 (S.D.W. Va. Oct. 12, 2022); *United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022), *appeal filed*, 22-50834 (5th Cir. Sep. 21, 2022)).  These decisions are inapposite because they did not analyze the issue of which classes of weapons are protected by the Second Amendment.  Rather, *McCraw* held unconstitutional a state statute restricting firearms rights of 18-to-20-year-olds, 2022 WL 3656996, at *13, *Price* held unconstitutional 18 U.S.C. § 922(k), which prohibits possession of firearms with obliterated serial numbers, *Price*, 2022 WL 6968457, at *1, and *Quiroz* held unconstitutional 18 U.S.C. § 922(n), which prohibits those under felony indictment from receiving firearms, *Quiroz*, 2022 WL 4352482, at *13.[4]  Defendants do not quarrel with Plaintiff's overall

---

[4] The Court need not and should not venture down the rabbit hole of evaluating the reasoning of district court cases about firearms laws not at issue here, but it is worth noting that other courts have come to different conclusions regarding the constitutionality of the laws or same type of laws at issue in *McCraw*, *Price*, and *Quiroz*.  *See*, *e.g.*, *Reese v. Bureau of Alcohol Tobacco Firearms & Explosives*, No. 6:20-CV-01438, 2022 WL 17859138, at *10 (W.D. La. Dec. 21, 2022), *appeal filed*, No. 23-30033 (5th Cir. Jan. 13, 2023) (upholding federal firearms restrictions on 18-to-20-year-olds); *United States v. Holton*, No. 3:21-CR-0482-B, 2022 WL 16701935, at *3-6 (N.D. Tex. Nov. 3, 2022) (rejecting *Price* and upholding 18 U.S.C. § 922(k)); *United States v. Simien*, No. SA-22-CR-00379-JKP, 2023 WL 1980487, at *7-9 (W.D. Tex. Feb. 10, 2023) (rejecting *Quiroz*, upholding 18 U.S.C. § 922(n), and also upholding § 922(o)).

point that under *Heller* and *Bruen*, Second Amendment analysis must be based in text and history. But as to the issue of which weapons are protected, the Supreme Court has already done much of the work by "[d]rawing from [the] historical tradition" of "prohibit[ing] the carrying of 'dangerous and unusual weapons'" to conclude "that the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Bruen*, 142 S. Ct. at 2143 (quoting *Heller*, 554 U.S. at 627).

### C.  Section 922(o) Satisfies *Bruen*'s Second Amendment Test

#### 1.  *Defendants did not improperly conflate the two prongs of* Bruen*'s test*

Defendants showed that § 922(o) is constitutional under either prong of *Bruen*'s Second Amendment test: the Second Amendment's plain text does not protect machinegun possession, Mem. 16-21, and § 922(o) is consistent with historical tradition, Mem. 21-22.  In arguing otherwise, Plaintiff accuses Defendants of improperly conflating *Bruen*'s two prongs by considering at both prongs the distinction between protected weapons in common use and unprotected dangerous and unusual weapons.  Pl. Br. 22-23.  But Defendants' approach is consistent with *Bruen*, which considered the inquiry about the categories of protected weapons as relevant to both prongs.  Mem. 15 n.5.

As Plaintiff acknowledges, at the first prong of *Bruen*'s test, courts consider the Second Amendment's text, "which should be 'informed by history.'"  Pl. Br. 22 (quoting *Bruen*, 142 S. Ct. at 2127).  History illuminates the Second Amendment's text because its "text . . . was widely understood to codify a pre-existing right, rather than to fashion a new one," *Heller*, 554 U.S. at 603.  That history informing the scope of the pre-existing right codified in the Second Amendment's text includes both the history of members of the militia "bringing arms 'in common use at the time' for lawful purposes like self-defense" to militia service, and the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'"  *Id.* at 624, 627 (citation

omitted).  This historical tradition is also directly relevant to *Bruen*'s second prong, under which even laws that burden conduct protected by the Second Amendment are constitutional if "consistent with this Nation's historical tradition of firearm regulation."  142 S. Ct. at 2126. Ultimately, for the reasons explained below, § 922(o) is constitutional regardless of whether this Court concludes that the inquiry about weapons in common use as opposed to dangerous and unusual weapons is relevant to *Bruen*'s first prong, second prong, or both.

2.      *Machineguns are not protected by the Second Amendment's text*

Defendants showed that possession of machineguns is not protected by the text of the Second Amendment because machineguns are not in common use for lawful purposes such as self-defense; rather, they are dangerous and unusual weapons.  Mem. 16-21.  Plaintiff's contrary arguments are incorrect.

First, Plaintiff argues that machineguns are protected by the Second Amendment because they are commonly used in the military.  Pl. Br. 3-5.  But as already explained, the Second Amendment does not confer a right to possess all weapons in standard usage by the military. Instead, the test is whether a class of weapons is in common use for lawful purposes such as self-defense. *See supra*, pp. 2-4.

Second, Plaintiff cites various statistics and calculations regarding the number of machineguns in circulation, but none of them establish that machineguns are in common use. Plaintiff cites a 2021 statistical report indicating that there were 741,146 registered machineguns in a federal database of firearms registered under the NFA.  *See* Pl. Br. 6 & n.3 (citing Pl. Br., Ex. B).  But as Plaintiff acknowledges, "[t]he possession of a large percentage of those machineguns are restricted to certain manufacturers, importers, local law enforcement, and other non-private entities." *Id*. at 6; *see also* 18 U.S.C. § 922(o)(2)(A) (statutory exception for "a transfer to or by, or possession by or under the authority of" federal, state, or local government).  A figure that

11

includes such restricted machineguns is not relevant because the Second Amendment protects weapons "typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, as opposed to specialized weapons used in law enforcement.[5]  Indeed, the premise behind the NFA was Congress's conclusion that "there is no reason why anyone except a law officer should have a machine gun."  H.R. Rep. No. 73-1780, at 1 (1934).

Plaintiff seeks to generate a much higher number of machineguns by arguing that had states and the federal government not enacted legal restrictions on machineguns, there would have been "more than 4,300,000" machineguns in circulation.  Pl. Br. 8.  But under *Heller* and *Bruen*, the test is whether weapons are "'in common use' today for self-defense," *Bruen*, 142 S. Ct. at 2134 (quoting *Heller*, 554 U.S. at 627), not whether they *would have been* in common use in a counterfactual world in which the legal regime had been different.  Further, Plaintiff's counterfactual prediction is purely speculative.  Plaintiff starts from estimates about the number of machineguns and semi-automatic assault rifles from a 1985 news article, which was not cited in the Amended Complaint and therefore not properly before the Court on a Motion to Dismiss, *see Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("Generally, the sufficiency of a complaint must rest on its contents alone."),[6] then assumes without evidence that the ratio of machineguns to assault rifles would have stayed constant over the course of decades.  *See* Pl. Br. 8 & n.9 (citing Ex. F).

---

[5] Even if this total number of registered machineguns was the relevant metric, that number would still be insufficient because it "is less than .2% of total firearms in the United States[,]" which "remains too insignificant for machineguns to be considered in common use." *Simien*, 2023 WL 1980487, at *9 (cited in Mem. 20-21).  Plaintiff offers no response to this analysis in *Simien*.

[6] As explained below, the news article is also inadmissible hearsay that cannot be considered on a Motion for Summary Judgment.  *See infra*, pp. 19-20.

Plaintiff also cites a document produced by ATF in 2016 in response to a FOIA request, which reports that as of 2016, there were 175,977 "Pre 86" machineguns, *id.* at 7; *id.*, Ex. E, meaning machineguns falling under the statutory exception for "any lawful transfer or lawful possession of a machinegun that was lawfully possessed before [May 19, 1986]." 18 U.S.C. § 922(o)(2)(B). But the Fifth Circuit recently considered this very document and correctly concluded that this amount is insufficient to demonstrate that machineguns are in common use. *Hollis*, 827 F.3d at 449-50.

Plaintiff incorrectly relies on Justice Alito's concurrence in *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring), which concluded that stun guns were protected by the Second Amendment and noted that there were approximately 200,000 stun guns owned by civilians. *See* Pl. Br. 6-7. That concurrence commanded the votes of just two Justices and is not the law. But it also does not support Plaintiff on its own terms. Justice Alito did not endorse a numerical threshold for common use, but rather concluded that stun guns were protected because they "are widely owned *and accepted as a legitimate means of self-defense across the country*," noting that private citizens "may lawfully possess them in 45 States." *Caetano*, 577 U.S. at 420 (emphasis added). By contrast, machineguns are not widely accepted as a legitimate means of self-defense across the country. They are banned (apart from machineguns possessed under governmental authority or grandfathered weapons) by the federal government, and most states have enacted machinegun laws that are at least as restrictive as federal law. Mem. 18-19 & n.6; *see also Hollis*, 827 F.3d at 450 ("Justice Alito did not think the absolute number [of 200,000 stun guns] by itself was sufficient. Rather, he thought the number was sufficient when paired with the

statistic that stun guns may be lawfully possessed in 45 states.  The same showing cannot be made for machineguns.").[7]

Plaintiff argues that widespread laws restricting machineguns cannot support the conclusion that machineguns are unprotected by the Second Amendment.  But because the Supreme Court has made "common use" a requirement for Second Amendment protection, the regulatory landscape of where a weapon is permitted or restricted is part of the backdrop underlying whether a weapon is protected.  Nor is considering such laws tantamount to using "an unconstitutional law . . . to justify its existence[,]" Pl. Br. 8-9 (capitalization omitted), as Plaintiff protests.  As Defendants showed, Congress curtailed machinegun usage through severe regulation soon after machineguns became widely available because of their prevalence in violent crime, and most states have followed suit.  Mem. 2-5, 18-19.  Such laws are a continuation of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'"  *Heller*, 554 U.S. at 627 (citation omitted).

Finally, Plaintiff's argument that machineguns "are still protected arms under the Second Amendment" even if "machineguns did not pass the 'common use' test," Pl. Br. 12-15, is directly foreclosed by *Heller* and *Bruen* and finds no support in the Second Amendment's text.  *Bruen* and *Heller* held that "the Second Amendment protects *only the carrying of weapons that are those 'in common use at the time,'* as opposed to those that "are highly unusual in society at large."  *Bruen*, 142 S. Ct. at 2143 (quoting *Heller*, 554 U.S. at 627) (emphasis added).  Under clear Supreme Court

---

[7] Because Plaintiff is incorrect that the Supreme Court recognized a numerical "common use" threshold of 200,000 weapons, Plaintiff's estimate that "there would have been at least 230,000 'pre-86' machineguns" as of 1986, Pl. Br. 7 (internal footnote omitted), would not support his claim even if credited.  Furthermore, that estimate is based on speculative extrapolation from a 2012 news article, *see id.* at 7 & nn.6 & 8 (citing Pl. Br., Ex. D), which is not properly before the Court because it was not cited in the Amended Complaint and is inadmissible hearsay.  *See supra*, p. 12; *infra*, pp. 19-20.

precedent, weapons not in common use are not protected.  Further, Plaintiff is incorrect that the Second Amendment's prefatory clause, which states, "[a] well regulated Militia, being necessary to the security of a free State," U.S. Const. amend. II, demonstrates that machineguns are protected. The prefatory clause "announces a purpose," but "does not limit or expand the scope of the operative clause." *Heller*, 554 U.S. at 577-78.  And limiting protection to weapons in common use is consistent with the prefatory clause's purpose of supporting the militia because at the founding, "[t]he traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense." *Id.* at 624 (quoting *Miller*, 307 U.S. at 179).

### 3.   Section 922(o) is consistent with historical tradition

Section 922(o) is consistent with "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 627); Mem. 21-22.  Plaintiff does not dispute Defendants' showing that machineguns are dangerous. Mem. 16-17.  As described above, Plaintiff's arguments that machineguns are in common use, and therefore are not unusual, are incorrect. *See supra*, pp. 11-14.

As Plaintiff acknowledges, *Bruen* describes two metrics for analogizing historical regulations to modern regulations: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." 142 S. Ct. at 2123; Pl. Br. 27.  Plaintiff's arguments that § 922(o) fails these metrics are unpersuasive.  Regarding the "how" metric, Plaintiff argues that § 922(o) restricts machinegun usage in a way that goes beyond historical regulations on dangerous and unusual weapons because those historical regulations merely "burdened the *manner* in which persons could *bear* arms." Pl. Br. 28.  But as already explained, that is wrong: *Heller* and *Bruen* correctly determined that historical regulations prohibited the carrying of types of weapons that were dangerous and unusual. *See supra*, pp. 5-6.  And *Bruen* concluded that this historical tradition

was sufficient to limit Second Amendment protection to "the possession and use of weapons that are 'in common use at the time.'"  142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 627).

Regarding the "why" metric, contrary to Plaintiff's argument, the reasons for § 922(o) are perfectly in line with the reasons for historical regulations of dangerous and unusual weapons, which Plaintiff admits are to prevent conduct that would terrorize the people.  Pl. Br. 28.  Plaintiff cites *United States v. Wilks*, 58 F.3d 1518 (10th Cir. 1995), which characterizes § 922(o)'s legislative history as "virtually nonexistent" and "scant," but *Wilks* acknowledged that the legislative history included discussion of the necessity of legislation to "prohibit[] the transfer and possession of machine guns, used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime."  *Id.* at 1519 (quoting H.R. Rep. No. 495, 99th Cong., 2d Sess. 4 (1986)).[8]  And § 922(o) followed in the footsteps of the NFA, which severely restricted machineguns in order to "deprive[]" "[t]he gangster as a law violator . . . of his most dangerous weapon, the machinegun[,]" to address "[t]he growing frequency of crimes of violence in which people are killed or injured by the use of dangerous weapons."  H.R. Rep. No. 73-1780, at 1.  As with historical restrictions on dangerous and unusual weapons, Congress has restricted machineguns in order to protect people from being terrorized by violent criminals.[9]

---

[8] Plaintiff cites no authority for the proposition that in engaging in analogical reasoning, courts must rely on legislative history, even when the purpose of a law is readily discernible from its text. The Supreme Court has noted that "[i]t is of course clear from the face of the [NFA] that the NFA's object was to regulate certain weapons likely to be used for criminal purposes[.]"  *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (plurality opinion).  The same is true of § 922(o).

[9] Plaintiff is incorrect to argue that a "distinctly similar historical regulation" is required to sustain § 922(o) because it addresses "a general societal problem that has persisted since the 18th century[.]"  Pl. Br. 28 (quoting *Bruen*, 142 S. Ct. at 2131).  Machineguns did not exist at the founding.  The development of new advanced weaponry capable of "kill[ing] dozens of people within a matter of seconds," *Henry*, 688 F.3d at 640 (citation omitted), is the sort of "dramatic technological change[]" that "may require a more nuanced approach" to analogical reasoning, *Bruen*, 142 S. Ct. at 2132.

## II.      Plaintiff Is Not Entitled to Summary Judgment

Plaintiff's brief failed to articulate the legal standards for summary judgment, let alone explain how he met those standards.   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Weidenbach v. Casper-Natrona Cnty. Health Dep't*, 563 F. Supp. 3d 1170, 1176 (D. Wyo. 2021) (quoting Fed. R. Civ. P. 56(a)).   "A dispute is genuine 'if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way,' and it is material 'if under the substantive law it is essential to the proper disposition of the claim.'"  *Id.* (quoting *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013)).   "In considering the motion, the Court views the record and all reasonable inferences that might be drawn from it in the light most favorable to the party opposing summary judgment," *id.* (citation omitted), here, Defendants.

Plaintiff is not entitled to summary judgment for largely the same reasons, explained in this brief and Defendants' opening Motion to Dismiss brief, that Plaintiff's claim should be dismissed for failure to state a claim: Section 922(o) and its implementing regulations are constitutional as a matter of law. *See* Mem. 6-22; *supra*, pp. 1-16.   Plaintiff's sole claim, for "Violation of the Second Amendment Right to Keep and Bear Arms," Am. Compl. for Declaratory and Injunctive Relief, at 7 ("Am. Compl.") ECF No. 11-1, is based on the legal conclusion that "[t]he machine gun ban in 18 U.S.C. § 922(o) and the associated regulations violate Plaintiff's Second Amendment rights." *Id*. ¶ 22.   For the reasons already explained, machineguns are not protected by the Second Amendment, and § 922(o) is consistent with historical tradition.  *See* Mem. 6-22; *supra*, pp. 1-16. Accordingly, Plaintiff is not entitled to judgment on this claim, nor is Plaintiff entitled to a declaratory judgment that § 922(o) is unconstitutional.  Am. Compl. ¶ 25A.

Plaintiff also is not entitled to injunctive relief in the form of an order directing ATF to approve the Form 1 application to make a machinegun, *id*. ¶ 25B, for several additional reasons.

17

First, the DeWilde Arms Trust (the "Trust") submitted the application. *See* Compl. App'x "A", at 2, ECF No. 1-1. After Defendants pointed out that Plaintiff lacked authority to represent the Trust *pro se*, Memo. In Supp. of Defs.' Mot. to Dismiss the Compl., at 22-23, ECF No. 10, Plaintiff chose to drop the Trust from the Amended Complaint rather than retain counsel to represent the Trust, Mot. for Leave to Amend Compl., at 2, ECF No. 11. Accordingly, Plaintiff, who now asserts claims only in his personal capacity, *see* Am. Compl. ¶ 3, could not obtain relief on behalf of the Trust, even if his claim were otherwise valid (which it is not).

Second, Plaintiff has not offered any evidence that apart from the legal impediment of § 922(o), he and the Trust met all regulatory and statutory requirements for approval to make a machinegun. For example, Plaintiff has not provided evidence that he is not prohibited from possessing a firearm by other laws whose constitutionality he has not challenged. *See*, *e.g.*, 18 U.S.C. § 922(g). Therefore, Plaintiff has not shown that the Trust would be entitled to such approval, even if the legal impediment of § 922(o) were removed.

Third, Plaintiff has not attempted to show satisfaction of the factors for permanent injunctive relief. Parties seeking injunctive relief "must demonstrate '(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1049-50 (10th Cir. 2023) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 136, 156-57 (2010)). Plaintiff neither cites these factors nor explains how he satisfies them.

Moreover, Plaintiff's Motion for Summary Judgment violates local rules.  Plaintiff fails to abide by the requirement to set forth "a statement of all of the material facts as to which the movant contends no genuine issue exists[,]" which "must be numbered and must refer with particularity to those portions of the record upon which the movant relies." U.S.D.C.L.R. 7.1(b)(2)(D).  Because of that failure, it is difficult for Defendants to satisfy the requirement to identify each fact cited by Plaintiff as to which a genuine dispute exists. *See id.*

Nonetheless, Plaintiff makes factual assertions that are not supported by competent evidence.  For example, Plaintiff asserts that there were at least 230,000 privately held machineguns in 1986, and that there would have been more than 4,300,000 privately held machineguns today had § 922(o) never been enacted.  Pl. Br. 7-8.  These assertions are based on speculative extrapolations from estimates about the number of different types of weapons at different times in a 1985 *Newsweek* article, a 2012 publication of a firearms industry trade association, and the website of a different firearms industry trade association. *See id.* at 7-8 & nn.6 & 8-14 (citing Pl. Br., Ex. D; Pl. Br., Ex. F; NSSF, *Commonly Owned: NSSF Announces Over 24 Million MSRs in Circulation* (July 20, 2022), https://www.nssf.org/articles/commonly-owned-nssf-announces-over-24-million-msrs-in-circulation/ (last visited April 24, 2023)).  Such sources are inadmissible hearsay, Fed. R. Evid. 801(c), 802, and Plaintiff does not show that they fall within any hearsay exception.[10]  But this Court "can consider only admissible evidence" on a motion for summary judgment; "any hearsay" is "beyond the bounds of the court's consideration." *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010) (Gorsuch, J.).  In any event,

---

[10] Defendants do not dispute that Exhibits B, C, and E to Plaintiff's motion are communications or publications of ATF (or excerpts of such publications), or that the statistics contained in Exhibits B and E are accurate.

for the reasons already explained, Plaintiff's unsupported factual assertions would not support his legal claim, even if credited.  *See supra*, pp. 12-14.

## CONCLUSION

For the foregoing reasons and the reasons explained in Defendants' motion to dismiss, the Court should dismiss Plaintiff's Amended Complaint for failure to state a claim and deny Plaintiff's Motion for Summary Judgment.

Dated this 25th day of April, 2023

Respectfully Submitted,

NICHOLAS VASSALLO
United States Attorney


By:  /s/ Jeremy A. Gross
     JEREMY A. GROSS
     Assistant United States Attorney

     BRIAN M. BOYNTON
     Principal Deputy Assistant Attorney General

     LESLEY FARBY
     Assistant Branch Director

     /s/ Jeremy S.B. Newman
     JEREMY S.B. NEWMAN (Pro Hac Vice)
     Trial Attorney
     Civil Division, Federal Programs Branch
     U.S. Department of Justice
     1100 L St. NW
     Washington, DC 20005
     Phone: (202) 532-3114
     Email: jeremy.s.newman@usdoj.gov