# United States District Court

for the

District of Wyoming

| | | |
|---|---|---|
| Jake Stanley DeWilde | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-00003-SWS |
| | ) | |
| Attorney General of the United States; Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..............................................................................................................................1

    I.    The Court Should Grant Plaintiffs' Motion for Summary Judgment ...........................1

        A.  Defendants Misread Supreme Court Precedent ..................................................1

        B.  Plaintiff Has Demonstrated That Existing Case Law Upholding Section
            922(o) Does Not Comport With *Bruen*................................................................4

        C.  Section 922(o) Does Not Comport With *Bruen*..................................................4

             1.  Defendants Improperly Conflate the Two Prongs of *Bruen* ...............4

             2.  The Plain Text of the Second Amendment, as Informed by History,
                  Protects the Possession of a Machinegun ...........................................6

             3.  Section 922(o) is Not Consistent With This Nation's Historical
                  Traditions of Regulating Arms ...........................................................6

    II.    Plaintiff Is Entitled to Summary Judgment....................................................................8

CONCLUSION...........................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*District of Columbia v. Heller*, 554 U.S. 570 (2008).............................................................. passim

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) ........................................................................ passim

*New York State Rifle & Pistol Assn., Inc. v. Bruen,* 597 U.S. ___ (2022)............................. passim

*State v. Kessler*, 289 Or. 359, 368, 614 P. 2d 94 (1980).....................................................................1

*United States v. Miller,* 307 U.S. 174 (1939)....................................................................................6

*United States v. Wilks*, 58 F.3d 1518 (10th Cir. 1995) ......................................................................7

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II.........................................................................................................................9

## STATUTES

18 U.S.C. § 922(g) .......................................................................................................................8,9

18 U.S.C. § 922(o) .................................................................................................................. passim

Firearm Owners Protection Act of 1986, Pub. L. No. 99-308, 100 Stat. 449..................................7

## RULES

Fed. R. Evid. 803(15).......................................................................................................................10

Fed. R. Evid. 803(16).......................................................................................................................10

Fed. R. Evid. 803(17).......................................................................................................................10

## OTHER AUTHORITIES

Daniel Page, *Dangerous and Unusual Misdirection* (4 May 2011), https://ssrn.com/abstract=

    1859395.........................................................................................................................3,4,5

George Neumann, *Swords and Blades of the American Revolution* (1 Jan. 1973)..........................1

J. Trusler, *The Distinction Between Words Esteemed Synonymous in the English Language* (3d

    ed. 1794) ..............................................................................................................................2

National Firearms Act Trade & Collectors Association, *The Partisan*, Volume 4, Issue 3, Third

    Quarter, 2012 ...................................................................................................................10

National Shooting Sports Foundation, *Commonly Owned: NSSF Announces Over 24 Million*

    *MSRs in Circulation* (20 Jul. 2022), https://www.nssf.org/articles/commonly-owned-nssf-

    announces-over-24-million-msrs-in-circulation/ ...............................................................10

Tom Morganthau, et al., *Machine Gun U.S.A.,* Newsweek (Oct. 14, 1985) ................................10

**INTRODUCTION**

Defendants' response brief, ECF No. 24 ("Def. Br."), does not adequately invalidate the arguments Plaintiff makes in his brief in support of his motion for summary judgment, ECF No. 21 ("Pl. Br."). Defendants largely repeat a few quotes from *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *New York State Rifle & Pistol Assn., Inc. v. Bruen,* 597 U.S. ___ (2022) to conclude a narrow reading of Supreme Court precedent that disregards *Bruen*'s requirement to analyze the plain text of the Second Amendment, "as informed by history[,]" *Bruen*, slip op. at 10, and which improperly concludes that machineguns are not in common use, are dangerous and unusual, and may be banned. The arguments put forth by Defendants do not comport with the standards of *Bruen*, and § 922(o) ("the machinegun ban") therefore must be found unconstitutional. Since the machinegun ban is unconstitutional, Plaintiff is entitled to summary judgment.

**ARGUMENT**

I.   **The Court Should Grant Plaintiffs' Motion for Summary Judgment**
     **A. Defendants Misread Supreme Court Precedent**

The Supreme Court has reaffirmed that the Court has never conducted "an exhaustive historical analysis… of the full scope of the Second Amendment[.]" *Bruen*, slip op. at 12 (quoting *Heller*, 554 U.S. at 627). Especially relevant to the instant case, the Court emphasized that courts "will have to consider eventually[] *what* types of weapons" are protected. *Heller*, 554 U.S. at 624. From the start, Defendants incorrectly argue that it is erroneous "that ordinary military equipment is protected by the Second Amendment" because such a reading would have "no limiting principle[.]" Def. Br. at p. 3. *Heller did* propose a theoretical limit: "[small-arms] weapons used by militiamen[.]" *Heller*, 554 U.S. at 625 (citing *State v. Kessler*, 289 Ore. 359, 368, 614 P. 2d 94, 98 (1980) (citing G. Neumann, Swords and Blades of the American Revolution 6-15, 252-254

1

(1973))) This perfectly comports with *Heller*'s holding that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms," *Id.* at 582, and *Heller* determined that "all firearms constitute[] 'arms.'" *Id.* at 581 (citing 1 J. Trusler, The Distinction Between Words Esteemed Synonymous in the English Language 37 (3d ed. 1794)) A machinegun is defined as a firearm. *See* 26 U.S. Code § 5845 ("The term 'firearm' means… (6) a machinegun").

This attempt by the Defendants to identify a "limiting principle" to prohibit "ordinary military equipment" highlights their overall failure to perform analysis of the Second Amendment's text and historical purpose, and especially the prefatory clause of the Second Amendment. Def. Br. at p. 3. Indeed, nowhere in Defendants' brief do they perform a comprehensive analysis of the plain text of the Second Amendment, as *Bruen* requires, such as to identify the primary purpose of the prefatory clause, let alone tie the clause to the command.

Defendants reinforce this misreading when pointing to *Heller*'s hypothetical objection surrounding weapons that are most useful in military service, contorting the passage to implicitly endorse the machinegun ban, *see* Def. Br. at p. 3-4 (citing *Heller*, 554 U.S. at 627-28), which Plaintiff thoroughly rebuffed, *see* Pl. Br Part III. Defendants then point to analysis by the Fifth Circuit in *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016), which Plaintiff demonstrated would not comply with *Bruen*. *See generally* Pl. Br. Defendants specifically quote *Hollis*' unfounded conclusion that the "individual right protected by the Second Amendment *applies only to the second category of weapons*[.]" *Hollis*, 827 F.3d 445 (referring to two "classes of weapons" that the *Hollis* court improperly extrapolated from *Heller*). Defendants read *Heller*'s common use language to say that "*Heller* therefore made the relevant metric for common use for civilian purposes," Def. Br. at p. 3, but the Court made no such requirement, and Defendants misread the common use language to exclude weapons commonly used in military service.

2

Finally, the faulty reliance Defendants place on the pre-*Bruen* dicta surrounding dangerous and unusual criteria is evident in the complete absence of any actual independent analysis of the text or meaning of their dangerous and unusual authorities in their reply brief whatsoever. *See generally* Def. Br. To simply posit that *Heller* said dangerous and unusual weapons are not protected, without actually considering the meaning of those authorities, and then determine that machineguns fall into that category is not a genuine analysis, and does not comport with *Bruen*, which analyzed statutes criminalizing affray. Plaintiff will perform analysis on one of Defendants' dangerous and unusual authorities, 4 Blackstone, Commentaries, 148–149 (1769), which should carry the most weight among their authorities because it is the most likely to align with "American colonial views leading up to the founding," *Bruen*, slip op. at 11, being their only referenced authority prior to the founding and close to the time of the ratification of the Second Amendment.

Blackstone identified the following offense: "The offence of riding or going armed with dangerous or unusual weapons, is a crime against the public peace, by terrifying the good people of the land[.]" 4 Blackstone, Commentaries, at 148-149. This offense was analyzed in Daniel Page, *Dangerous and Unusual Misdirection* (2011) (*see* Ex. H). The offense "did not mention any way of classifying different types of weapons," it was "a crime against the public peace" when an individual would "terrify the good people of the land[.]" *Id.* at p. 11. *Bruen* addressed *the same* authority, when "respondents' *amici* argue that "'offensive'" arms in the 1600s and 1700s were what Blackstone and others referred to as "'dangerous or unusual weapons,'" Brief for Professors of History and Law as *Amici Curiae* 7 (quoting 4 Blackstone, Commentaries, at 148-149), a category that they say included firearms[.]" *Bruen*, slip op. at 38. The Court went on to find the same conclusion as the Page reference, explaining that "Respondents, their amici, and the dissent all misunderstand these statutes. Far from banning the carrying of any *class* of firearms, they

merely codified the existing common-law offense of bearing arms to terrorize the people[.]" *Id.* (emphasis added). Thus, *Bruen* did not determine that statutes prohibiting carrying of dangerous and unusual weapons prohibited "*types* of weapons," Def. Br. at p. 15, they prohibited the *manner* that weapons may be carried.

The conclusion of this analysis is the same for each dangerous and unusual authority that Defendants rely on. Of course, "*Bruen* did not cite" the Page reference. Def. Br. at p. 5. The Court performed its own analysis, and it came to the same conclusion as the Page reference. This Court, when performing that same historical analysis, should come to the same conclusion.

## B. Plaintiff Has Demonstrated That Existing Case Law Upholding Section 922(o) Does Not Comport With *Bruen*

Plaintiff has thoroughly explained why existing case law cited by Defendants upholding section 922(o) does not comport with *Bruen*'s requirement to consider the plain text of the Second Amendment, "as informed by history[,]" *Bruen*, slip op. at 10; *see* Pl. Br. at Part IV, V. Defendants argue that these decisions "concluded that machineguns were beyond the scope of the Second Amendment based on analysis of 'the Second Amendment's text, as informed by history[.]'" Def. Br. at p. 6 (citing *Bruen*, slip op. at 10). Defendants' argument is incorrect. Those decisions did not perform an independent analysis of the plain text of the Second Amendment, and Defendants have provided no support for this claim. As such, the decisions do not comport with *Bruen*.

### C. Section 922(o) Does Not Comport With *Bruen*

#### 1. Defendants Improperly Conflate The Two Prongs of *Bruen*

Defendants insist that they do not conflate the two prongs of *Bruen*, but continue to do so when they attempt to consider the "history informing the scope of the pre-existing right codified

4

in the Second Amendment[]" and laws "prohibiting the carrying of 'dangerous and unusual weapons'" at *Bruen*'s first prong. Def. Br. at p. 10 (citing *Heller*, 554 U.S. at 627). This argument completely contradicts the approach required by *Bruen*. When evaluating the first prong in *Bruen*, the Court did not consider a *single* "historical analogue" to the challenged conduct in that case. *Bruen*, slip op. at 21. The *strictly textual* analysis considered whether or not the plaintiffs were among *the people* mentioned in the Second Amendment; the weapons involved in the conduct met the definition of *arms* mentioned in the Second Amendment; and the conduct of carrying arms was covered by the Second Amendment's textual right to *bear arms*. *See Bruen*, slip op. at Section III.A. The Court spent less than two pages of its opinion performing this "straightforward historical inquiry." *Bruen*, slip op. at 18; *see also id.* at Section III.A. This plain-text analysis should be contrasted with the Court's more than thirty pages of in-depth analysis of historical analogues at the second prong. *See id*. at 30-62. Further demonstrating the improper approach exercised by Defendants, *none* of *Bruen*'s analysis of the statutes surrounding dangerous and unusual weapons occurred at the first prong; *Bruen* expressly considered these statutes as historical analogues at the second prong.

Defendants dispute "Plaintiff's argument that machineguns 'are still protected arms under the Second Amendment' even if 'machineguns did not pass the 'common use' test,'" by saying that "the Second Amendment protects *only the carrying of weapons that are those 'in common use at the time*[.]'" Def. Br. at p. 14 (citing Pl. Br. 12-15; *Bruen*, slip op. at 44 (quoting *Heller*, 554 U.S. at 627) (emphasis added)). But Plaintiff is not challenging a *carry* restriction in the instant case, he is challenging a *total ban* on the *possession* of a class of arms, and the Supreme Court has not "made 'common use' a requirement for Second Amendment protection." Def. Br. at p. 14. The

sole mandate that *Bruen*'s first prong requires is that the analysis of the plain text of the Second Amendment be "informed by history." *Bruen*, slip op. at 10.

### 2.  The Plain Text of the Second Amendment, as Informed by History, Protects the Possession of a Machinegun

Plaintiff identified three independent grounds that provide machineguns with Second Amendment protection under *Bruen*'s first prong, *see* Pl. Br. at pp. 2-15, and Defendants provide little new argument against these demonstrations, primarily falling back on their overall erroneous conclusions that machineguns are not in common use and are dangerous and unusual, *see generally* Def. Br. at pp. 11-15, which Plaintiff thoroughly rebuffed, *see generally* Pl. Br. As explained *supra*, pp. 4-6, Defendants' arguments improperly conflate the two prongs of *Bruen*, save for one exception that does not help their case. Defendants point to "the prefatory clause's purpose of supporting the militia" to support the conclusion that "men [brought] arms 'in common use at the time,'" Def. Br. at p. 15 (citing *Heller*, 554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179)), but they stop short of identifying what those commonly used arms would consist of: weapons most useful in military service.

### 3.  Section 922(o) is Not Consistent With This Nation's Historical Traditions of Regulating Arms

In their only attempt to explain "how and why the regulations burden a law-abiding citizen's right to armed self-defense[,]" *Bruen*, slip op. at 20, the Defendants do not sufficiently satisfy their burden. In attempting to justify the *how* metric, Defendants say that "*Bruen* correctly determined that historical regulations prohibited the carrying of types of weapons that were dangerous and unusual." Def. Br. at 15. Defendants' reading is wrong. *Bruen* said that "[f]ar from banning the carrying of any *class* of firearms, they merely codified the existing common-law

offense of bearing arms to terrorize the people[.]" *Bruen*, slip op. at 38 (emphasis added). Defendants use of the word *types* is synonymous with *Bruen*'s *class*. Thus, *Bruen* squarely refuted the reading used by Defendants.

Defendants then attempt to satisfy the *why* metric by making a claim that "§ 922(o) followed in the footsteps of the NFA, which severely restricted machineguns[.]" Def. Br. at p. 16. Besides the fact that this claim is unfounded, the NFA is not a *total ban*, it is a *restriction*. Defendants also point to a single excerpt from *United States v. Wilks*, 58 F.3d 1518 (10th Cir. 1995) referring to discussion of "legislation to 'prohibit[] the transfer and possession of machine guns[.]'" Def. Br. at p. 16, citing *Wilks*, 58 F.3d 1518, 1519. But this brief discussion was not on the machinegun ban as codified, and that legislation was not passed by Congress, which demonstrates that Congress did not discuss nor provide justification for a machinegun ban to codify into law, and Congress did not ban machineguns "in order to protect people from being terrorized by violent criminals." Def. Br. at p. 16.[1] Defendants have not satisfied either of the "at least two metrics" that must be met, the *how* and *why* metrics comparing a modern regulation to a historical regulation. *Bruen*, slip op. at 20.

---

[1] Defendants challenge the proposition that courts should "rely on legislative history" when "engaging in analogical reasoning," notably "when the purpose of a law is readily discernible from its text." Def. Br. at p. 16, n. 8. But the purpose of the machinegun ban is not discernible from its text. If a reasonable person read the text of the machinegun ban in the context of the Firearm Owners Protection Act that it was amended to, which was legislation enacted to *protect* Second Amendment activity, then that person would surely be confused as to why there was a lone section among those *protections* that *prohibited* Second Amendment activity, and could reasonably even conclude that it was codified by error or mistake. However, Plaintiff disagrees that courts should rely on the text of a statute when its purpose is not clearly evidenced, and advances that courts should instead consider its documented legislative background established by elected representatives who were responsible for its enactment and are accountable to the people. Indeed, courts are required to consider "why" a regulation "burden[s] a law-abiding citizen's right to armed self-defense," *Bruen*, slip op. at 20, and Defendants, who hold the burden of justifying that metric, provide no support for it besides the erroneous assumption that the machinegun ban possessed the same legislative intent as the NFA. The NFA is not at issue in the instant case; is not a *total ban*; was enacted more than a half-century prior to the machinegun ban; and was thus codified by a Congress of a completely different generation than the Congress that codified the machinegun ban. To *assume* that the intent of two separate generations were the same is not established from a sensible analysis, and such a proposition must be further supported.

## II.    Plaintiff Is Entitled to Summary Judgment

After Defendants had the opportunity and refused to challenge Plaintiffs' standing, they now present a new legal issue arguing that because Plaintiff "asserts claims only in his personal capacity," he "could not obtain relief on behalf of the Trust[.]" Def. Br. at 18. But this argument was categorically rejected in *Hollis*, where the Fifth Circuit concluded that "Trusts are 'persons' within the Gun Control Act," after Mr. Hollis attempted to argue to the contrary, just as Defendants do here. *Hollis*, 824 F.3d at 451. Indeed, as settlor and sole trustee of the DeWilde Arms Trust (the "Trust"), a copy of which Plaintiff submitted to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE") when he submitted his Form 1 application, (ECF No. 1, App'x "A"), Plaintiff has absolute control over all actions and possessions of the Trust, and the Trust cannot take any actions on its own behalf. BATFE has further clarified the definition of a "Person" to be a "trust" on Form 1 applications. *See id.* at 5. Thus, Defendants' argument directly contradicts the definition of a "person" according to Fifth Circuit precedent and *their own published* ATF Form 1 (5320.1). *See id.*

The notion that Plaintiff cannot obtain relief becomes even more outlandish when Defendants question whether Plaintiff "and the Trust met all regulatory and statutory requirements for approval to make a machinegun[,]" Def. Br. at p. 18, and offer 18 U.S.C. § 922(g) as one such example. This cannot be a serious argument. The offered statute restricts possession of firearms by certain people who have committed certain unlawful acts. Plaintiff has asserted that he is a law-abiding citizen. *See* Pl. Br. at p. 1. It is unclear to Plaintiff why he would have to provide evidence that he is a law-abiding citizen, when the burden to prove criminal violations of section 922(g) is imposed *on the government* when submitting an ATF Form 1 (5320.1). Nonetheless, Plaintiff, through sole control of his trust, legally owns and possesses a pre-86 machinegun, which is

8

currently registered on the National Firearms Registration and Transfer Record (NFRTR), and was lawfully transferred to him pursuant to approval under the authority of Defendants. *See* Ex. I. Such approval, as well as continued ownership and possession of the machinegun, requires Plaintiff not to be in violation of section 922(g). Thus, Plaintiff, through his trust, "would be entitled to such approval." Def. Br. at p. 18.

Defendants, again raising new legal issues after they had prior occasion to do so, question whether Plaintiff has satisfied the "factors for permanent injunctive relief." Def. Br. at p. 18. (1) Plaintiff has suffered an irreparable injury in the form of a *total prohibition* of his Second Amendment right to possess weapons most useful in military service; (2) There are no remedies, monetarily or otherwise, available at law, that may compensate that injury; (3) Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted because Plaintiff is unable to exercise his Second Amendment right in alignment with the prefatory clause, *see* U.S. Const. amend. II; (4) The public interest would not be disserved by a permanent injunction, because Plaintiff is a law-abiding citizen and member of the militia who has been trained and qualified in the employment of machineguns by and for the U.S. armed services, who would have his constitutional rights restored. Thus, Plaintiff has demonstrated that his challenge satisfies the factors for permanent injunctive relief.

Defendants say that Plaintiffs' Motion for Summary Judgment violates U.S.D.C.L.R. 7.1(b)(2)(D). *See* Def. Br. at p. 19. Plaintiff has complied with the local rules. Plaintiffs' "numbered" Table of Contents addresses each "genuine issue" raised by the Defendants, and each respective part of his brief contains statements that address "all of the material facts as to which the [Plaintiff] contends no genuine issue exists." U.S.D.C.L.R. 7.1(b)(2)(D). *See generally* Pl. Br.

Defendants argue that Plaintiff provided exhibits that are inadmissible as hearsay. Def. Br. at p. 19 (citing Ex. D; Ex. F; NSSF, *Commonly Owned: NSSF Announces Over 24 Million MSRs in Circulation* (July 20, 2022) ("*Commonly Owned*")). Ex. D falls within the hearsay exceptions of Fed. R. Evid. 803(15), (17); *Commonly Owned* falls within the hearsay exception of Fed. R. Evid. 803(17); and Ex. F falls within the hearsay exception of Fed. R. Evid. 803(16). Nonetheless, machineguns are in common use today, even if these exhibits were excluded from the record.

## CONCLUSION

For the reasons stated above and in Plaintiffs' brief in support of his motion for summary judgment, the Court should grant Plaintiffs' Motion for Summary Judgment and deny Defendants' Motion to Dismiss.

DATED this 26th day of April, 2023.                Respectfully Submitted,


Jake S. DeWilde

PO Box 267

Wapiti, WY 82450

(307) 587-4524